IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| URSULA NICHOLE WILLIAMS, on behalf of herself and all others similarly situated, | § § § § § § § |
| Plaintiffs, | §  Civil Action No. _____ |
| | § § |
| LAKEVIEW LOAN SERVICING, LLC, and LOANCARE, LLC, | § § § § |
| Defendants. | § |

## CLASS ACTION COMPLAINT

1. Defendants Lakeview Loan Servicing, LLC ("Lakeview") and LoanCare, LLC ("LoanCare") routinely and systematically violate provisions of the Texas Debt Collection Act ("TDCA") and breach uniform covenants in mortgages guaranteed by the Federal Housing Administration ("FHA") by collecting from borrowers fees that are not authorized by their mortgage agreements, the FHA rules, or permitted by law.

2. Lakeview is the fourth largest mortgage-loan servicer in the country. On its website, Lakeview claims that it "helps" more than 1.4 million customers per year with payment of their mortgages.

3. LoanCare is a mortgage loan subservicer that performs servicing-related functions with regard to the mortgage loans that Lakeview services, including Plaintiff's mortgage loan.

4. Lakeview and LoanCare abuse their position as mortgage servicers by charging fees to borrowers who make their mortgage payments online or over the phone ("Pay-to-Pay fees"), despite those fees not being expressly authorized in the terms of standard mortgage agreements. Because the fees are not expressly agreed to or otherwise legally chargeable, Defendants violate the TDCA by collecting or attempting to collect Pay-to-Pay fees.

5. Moreover, as servicers of mortgages insured by the Federal Housing Administration ("FHA"), and as assignees of the servicing rights to FHA mortgages, Defendants are bound by the rules and regulations of the Secretary of Housing and Urban Development ("HUD") applicable to the servicing of FHA mortgages.

6. To service an FHA-insured mortgage, the FHA requires all loan servicers, including Defendants, to be approved by the FHA before servicing any loans. Loan servicers, such as Defendants, are paid loan servicing fees out of the interest paid by FHA borrowers. In exchange for the regular loan servicing fees paid from borrowers' monthly interest payments, Defendants and other FHA-approved loan servicers must agree to follow the FHA's rules regarding loan servicing, as implemented by the Secretary of Housing and Urban Development.

7. The uniform FHA mortgage agreement expressly limits additional fees that may be collected from borrowers to only those specific fees authorized by the Secretary of HUD. Exhibit 1, ¶ 8.

8. HUD's mandatory servicing rules prohibit FHA-approved servicers, such as Defendants, from charging fees not authorized by HUD.

9. In fact, HUD has never authorized any Pay-to-Pay fee.

10. HUD servicing rules regarding fees are incorporated by reference into all FHA-insured mortgages.

11. Plaintiff Ursula Nichole Williams has an FHA-insured deed of trust that is serviced Lakeview and subserviced by LoanCare.

12. Defendants charge borrowers Pay-to-Pay Fees of up to $15.00 for payment over the telephone, up to $12.00 for IVR payment and up to $10.00 for online payment.

13. On information and belief, the actual cost for Defendants to process online mortgage payment transactions is very low—well below the Pay-to-Pay Fees that Defendants charge mortgagers. Defendants pocket the difference as pure profit.

14. Even if Pay-to-Pay fees were authorized, which they are not, the mandatory HUD servicing rules incorporated into Plaintiff's deed of trust provide that any fee charged to the borrower must be "based on actual cost of the work performed or actual out-of-pocket expenses" of the service provided to the borrower. Exhibit 2 at 6, § III.A.1.f.ii.(A).

15. On behalf of herself and all others similarly situated, Plaintiff seeks injunctive, declaratory, and compensatory relief against Defendants for their violations of the Texas Debt Collection Act and breaches of contract.

## PARTIES

16. Plaintiff Ursula Nichole Williams is a citizen of the State of Texas.

17. Defendant Lakeview Loan Servicing, LLC is a Delaware limited liability company with a principal place of business at 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, Florida, 33146.

18. Defendant LoanCare, LLC is a Virginia limited liability company with a principal place of business at 3637 Sentara Way, Virginia Beach, Virginia 23452.

## JURISDICTION AND VENUE

19. Defendants conduct business in the State of Texas, including servicing, or subservicing, of Plaintiff's and other borrowers' mortgages, and their contacts in the State are sufficient such that this Court's exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice.

20. Venue is proper in this District because a substantial part of the acts or omissions giving rise to Plaintiff's causes of action occurred in Brazos County, Texas.

21. As alleged above, minimal diversity exists between the parties in this action. Furthermore, on information and belief, the amount in controversy, exclusive of costs and interest, exceeds $5,000,000.00.

22. Defendants are two of the largest mortgage lenders in the United States. The Classes in this lawsuit are believed to consist of thousands of members. To date, Defendants have collected from Plaintiff no less than $444.00 in illegal Pay-to-Pay fees.

23. Thus, the amount in controversy in this action, exclusive of costs and interest, exceeds the amount-in-controversy requirement of 28 U.S.C. § 1332(d).

## COMMON FACTUAL ALLEGATIONS

### The Texas Debt Collection Act

24. The Texas Debt Collection Act ("TDCA") prohibits a debt collector from "us[ing] unfair or unconscionable means" in the collection of a consumer debt. Tex. Fin. Code § 392.303(a).

25. Both Lakeview and Loancare are *debt collectors* under the TDCA, defined as "a person who directly or indirectly engages in debt collection . . .." *Id.* at § 392.001(6).

26. As a mortgage servicer or subservicer, it is the primary business of each Defendant to handle the day-to-day administrative tasks of a mortgage loan, including receiving payments, sending monthly statements for the purposes of collecting amounts owed on the debt, and managing escrow accounts.

27. Each Defendant engages in *debt collection*, which the TDCA defines as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* at § 392.001(5).

28. A *consumer debt* under the TDCA is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." *Id.* at § 392.001(2).

29. As "an individual who has a consumer debt," Plaintiff is a *consumer* under the TDCA. *Id.* at § 392.001(1).

30. As alleged above, the Pay-to-Pay fees Defendants collected are not authorized by Plaintiff's deed of trust—or, indeed, any standard deed of trust or mortgage.

31. By collecting those fees, Defendants engaged in the specifically enumerated "unfair or unconscionable means" of debt collection of "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer[.]" Tex. Fin. Code § 392.303(a)(2).

**FHA Servicing Rules Restrict Fees**

32. The Federal Housing Administration, an agency within the United States Department of Housing and Urban Development, "provides mortgage insurance on loans made by FHA-approved lenders throughout the United States and its territories."[1] The FHA "is one of the largest insurers of mortgages in the world, insuring more than 46 million mortgages since its inception in 1934."[2]

33. The FHA provides incentives to private lenders to make loans to would-be homebuyers whose creditworthiness and inability to contribute a significant down payment make it difficult for them to obtain a home loan on reasonable terms.

---

[1] HUD.gov – The Federal Housing Administration, https://www.hud.gov/program_offices/housing/fhahistory (last visited on May 29, 2020).
[2] *Id.*

6

34. To achieve that goal, "FHA mortgage insurance provides lenders with protection against losses if a property owner defaults on their mortgage. The lenders bear less risk because FHA will pay a claim to the lender for the unpaid principal balance of a defaulted mortgage."[3]

35. The FHA restricts who can make and service FHA loans. "Only FHA-approved Mortgagees may service FHA-insured Mortgages," and those "Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees." Ex. 2 at 3, § III.A.1.

36. Defendants are both FHA-approved Mortgagees.

37. As FHA-approved Mortgagees, Defendants must annually "acknowledge that the Mortgagee is now, and was at all times throughout the Certification Period, subject to all applicable HUD regulations, *Handbooks*, Guidebooks, Mortgagee Letters, Title I Letters, policies and requirements, as well as Fair Housing regulations and laws including but not limited to 24 CFR § 5.105, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act) and Title VI of the Civil Rights Act of 1964."[4]

38. HUD's servicing requirements restrict the fees and charges an FHA-approved Mortgagee may collect from the typically lower-income FHA borrower. Handbook 4000.1: *FHA Single-Family Housing Policy Handbook*,

---

[3] *Id.*

[4] *See*, FHA Lender Annual Certifications: Supervised and Nonsupervised Mortgagees, Changes Implemented 8/1/2016, https://www.hud.gov/sites/documents/SFH_COMP_SUPERNONSUPER.PDF (last visited on May 29, 2020) (emphasis added).

https://www.hud.gov/sites/dfiles/OCHCO/documents/4000.1hsgh.pdf (last accessed by counsel on May 29, 2020) (the "FHA Handbook").

39. In the FHA Handbook, HUD makes clear "[t]he Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration[.]" *Id.*, at 3, § III.A.

40. These mandatory restrictions include limits on the types and amounts of fees and charges an FHA-approved Mortgagee may collect from a borrower.

41. FHA-insured mortgages contain uniform covenants.

42. In one such uniform covenant, the parties to the mortgage agree that "Lender may collect fees and charges ***authorized*** by the Secretary [of Housing and Urban Development]." Ex. 1 at ¶ 8 (emphasis added).

43. This provision incorporates by reference HUD's limits on allowable fees.

44. In a section entitled "Servicing Fees and Charges," the FHA Handbook establishes what fees and charges authorized by the HUD. Ex. 2 at 5, § III.A.1.f.

45. Specifically, the HUD Handbook defines "Allowable Fees and Charges a[s] those costs associated with the servicing of the Mortgage that are permitted to be charged to the Borrower," and defines "Prohibited Fees and Charges a[s] those costs associated with the servicing of the Mortgage that may not be charged to the Borrower." *Id.*, at § III.A.1.f.i.

46. HUD permits FHA-approved Mortgagees to "collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured and as ***authorized*** by HUD below." *Id.*, at § III.A.1.f.ii.(A) (emphasis added).

8

47. A fee or charge is authorized if it meets three specific criteria: the fee or charge "must be" (a) "reasonable and customary for the local jurisdiction"; (2) "based on actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage"; **and** (c) "within the maximum amount allowed by HUD." *Id.* at pp. 5–6, § III.A.1.f.ii.(A) (emphasis added).

48. Appendix 3.0 of the FHA Handbook contains an exhaustive list of the servicing fees and charges authorized by HUD and the maximum amounts that may be charged for such fees.[5]

49. Pay-to-Pay fees are not on that list.

50. In the absence of HUD authorization, FHA-approved Mortgagees are prohibited by contract from charging for alleged costs associated with servicing an FHA-insured mortgage.

51. Instead, if the FHA-approved Mortgagee wants authorization to collect additional fees and charges, it "may request approval . . . for any fee, charge, or unusual service not specifically mentioned in this *SF Handbook*." *Id.* at 6, § III.A.1.f.ii.(B).

52. If the fee or charge is approved, "[t]he Homeownership Center (HOC) will determine the maximum amount of any fee based on what is reasonable and customary in the area." *Id.*

---

[5] In the PDF version of the FHA Handbook, the term "maximum amount allowed by HUD" contains a hyperlink that, when clicked, brings the reader to Appendix 3.0.

53. Because Pay-to-Pay fees do not appear on the list of servicing fees and charges and have not been assigned a "maximum amount allowed" based on what HUD deems "reasonable and customary in the area," FHA-approved Mortgagees are prohibited by contract from collecting them from the FHA borrower.

54. Moreover, even were an FHA-approved Mortgagee to receive authorization to charge a Pay-to-Pay fee, the charge to the borrower must still be "based on actual cost of the work performed or actual out-of-pocket expenses"—in short, the servicer cannot collect such fees to create a profit center. *Id.*, at 6, § III.A.1.f.ii.(A).

55. Based upon information and belief, the Pay-to-Pay fees Defendants collect from borrowers exceed their out-of-pocket costs by several hundred percent, and thus violate mandatory HUD servicing rules that are incorporated into all FHA-insured mortgages.

## PLAINTIFF'S ALLEGATIONS

56. Plaintiff executed a standard form FHA deed of trust with uniform covenants to purchase her home. Ex. 1.

57. At some point, Lakeview acquired the servicing rights to the loan by way of an assignment. The Mortgage Agreement provides that "[t]he covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower," subject to a provision inapplicable here. Ex. 1, ¶ 12.

58. Thus, when Lakeview acquired the servicing rights to the loan, it became bound as an assignee to the obligations of the mortgage as well.

59. LoanCare is a subservicer operating on behalf of Lakeview.

60. Plaintiff makes loan payments online and over the phone, and each time she does so, Defendants collect from her a Pay-to-Pay fee.

61. Section 8 of her form FHA-insured deed of trust, entitled "Fees," states, "Lender may collect fees and charges *authorized* by the Secretary [of Housing and Urban Development]." *Id.* at 4 (emphasis added).

62. Section 14 of her form FHA-insured deed of trust provides further that "This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located." *Id.* at 6.

63. As alleged above, the TDCA prohibits the collection of Pay-to-Pay fees because they are not expressly authorized in Plaintiff's deed of trust or otherwise legally chargeable to Plaintiff.

64. Defendants' collection of Pay-to-Pay fees further constitutes a breach of contract because they are not authorized by the Secretary or otherwise by the deed of trust.

65. And even if a servicer had authorization to collect such a fee, HUD rules prohibit FHA-approved Mortgagees from passing on to borrowers more than the out-of-pocket costs for providing the service.

66. On information and belief, which can be confirmed through review of Defendants' documents, Defendants reap a substantial profit from collecting Pay-to-Pay fees.

67. The $12.00 collected from their borrowers in Pay-to-Pay fees thus violates the TDCA and also violates the HUD rules restricting fees, which are incorporated into their mortgage contracts.

68. Defendants have collected multiple Pay-to-Pay fees from Plaintiff.

## CLASS ALLEGATIONS

69. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, and predominance requirements of Rule 23(a).

70. Plaintiff seeks certification of the following classes (collectively, the "Classes"):

**The Texas Debt Collection Practices Act Class (the "TDCA Class")**

All persons in the United States (1) with a Security Instrument on a property located in the State of Texas, (2) that is or was serviced or subserviced by Lakeview or LoanCare, (3) who were charged one or more Pay-to-Pay fee, and (4) whose Security Instrument did not expressly allow for the charging of a Pay-to-Pay fee.

**The FHA Pay-to-Pay Class (the "FHA Pay-to-Pay Class")**:

All persons in the United States (1) with an FHA-insured mortgage on a property located in the State of Texas (2) that is or was serviced or subserviced by Lakeview or LoanCare (3) who were charged one or more Pay-to-Pay fee and (4) whose mortgages provide the "Lender may collect fees or charges authorized by the Secretary," or language substantially similar.

71. Plaintiff reserves the right to modify or amend the proposed class definitions before the Court determines whether certification is appropriate.

72. Excluded from the Classes are Defendants, and Defendants' parents, subsidiaries, affiliates, officers and directors, any entity in which Defendants have a controlling interest, all mortgagors who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and members of the staffs of the judges to whom this case should be assigned.

73. The members of the Classes are so numerous that joinder is impractical. While the exact number of members of the Classes cannot be determined without discovery, Plaintiff believes that the Classes consist of thousands of members, the identity of whom, upon information and belief, can be readily determined upon review of records maintained by Defendants.

74. Plaintiff's claims are typical of the claims of other members of the Classes, in that they arise out of the same acts of Defendants, namely assessing fees to borrowers that are not permitted by contract or Texas law. Plaintiff has suffered the harms alleged and has no interests antagonistic to the interests of any other member of the Classes.

75. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

76. The predominating common questions of law and fact include:

a. Whether the collection of Pay-to-Pay fees violates the Texas Debt Collection Act;

      b.    What is the proper method or methods by which to measure damages caused by Defendants' violations of the TDCA;

      c.    Whether Defendants should be enjoined from collecting or attempting to collect Pay-to-Pay fees;

      d.    Whether, and in what amount, Defendants may collect a Pay-to-Pay fee from borrowers with FHA-insured deeds of trust and mortgages;

      e.    Whether collecting such fees violates HUD rules and regulations;

      f.    Whether charging such fees violates provisions of the Plaintiff's and Class members' Security Instruments; and

      g.    What is the proper method or methods by which to measure damages caused by Defendants' breaches of the standard terms of FHA-insured mortgages.

      77.    Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the members of the Classes.

      78.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each of the Class member's claims are small relative to the complexity of the litigation, and due to the financial resources of Defendants, no member of the Classes could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action,

the members of the Classes will continue to suffer losses and Defendants' misconduct will proceed without remedy.

79. Even if members of the Classes could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

80. Alternatively, certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because it is clear that declaratory and injunctive relief is appropriate respecting the Classes as a whole.

## CLAIMS FOR RELIEF

### COUNT I: Violation of the Texas Debt Collection Act
### (On behalf of the TDCA Class)

81. Plaintiff incorporates paragraphs 1 through 76.

82. Plaintiff gave a deed of trust to secure the note she took out to purchase her home in the State of Texas, and she is therefore, under the TDCA, a "consumer" who took out a "consumer debt."

83. Each Defendant is a "debt collector" under the TDCA.

84. In the process of "debt collection," by collecting or attempting to collect Pay-to-Pay fees, Defendants engaged in the "unfair or unconscionable means" of "collecting or attempting to collect . . . a charge, fee, or expense incidental to the obligation" that was not "expressly authorized by the agreement creating the obligation or legally chargeable to the" Plaintiff and members of the TDCA Class.

85. As such, each Defendant violated the TDCA.

86. On behalf of the TDCA Class, Plaintiff seeks an injunction restraining Defendants from charging Pay-to-Pay fees and actual damages.

## COUNT II: Breach of Contract
### (On behalf of the FHA Pay-to-Pay Class)

87. Plaintiff incorporates paragraphs 1 through 86.

88. Plaintiff and members of the FHA Pay-to-Pay Class have FHA-insured mortgages that are or were serviced by Lakeview or LoanCare.

89. Plaintiff performed all conditions precedent to enforcing the terms of her deed of trust.

90. Defendants improperly collected from borrowers Pay-to-Pay fees contrary to the express terms of their contracts.

91. Moreover, the Pay-to-Pay fees Defendants collected exceeded their out-of-pocket costs by several hundred percent.

92. As a proximate cause of that breach, Plaintiff and members of the FHA Pay-to-Pay Class have paid fees that should not have been collected from them and which Defendants were not entitled to collect.

93. On behalf of the FHA Pay-to-Pay Class, Plaintiff seeks declaratory, injunctive, and compensatory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and others similarly situated, respectfully requests that this Court:

1. Issue an order that this action may be maintained as a class action under Fed. R. Civ. P. 23, that Plaintiff is a proper class representative, and that her counsel are appointed Class Counsel;

2. Award compensatory damages and restitution in the amount of all Pay-to-Pay fees collected from members of the FHA Pay-to-Pay Class and the TDCA Class, and interest on those fees;

3. Award actual damages in an amount according to proof;

4. Award injunctive relief requiring Defendants to cease collection of all improperly charged fees that have been charged to, but not yet collected from, Plaintiff and members of the Classes;

5. Award injunctive relief to enjoin Defendants' wrongful acts and further violations of Plaintiff's and the Classes' rights, including but not limited to requiring Defendants to implement procedures to ensure they cease collecting and attempting to collect the improper fees identified in this Complaint;

6. Award pre-judgment interest at the maximum rate permitted by applicable law;

7. Enter a declaratory judgment that Defendants, through their wrongful actions, have kept and continue to keep for themselves, benefits that are due and owed to Plaintiff and members of the Classes;

8. Award reasonable attorneys' fees and costs pursuant to applicable law; and

9. Award such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff and members of the Classes hereby request a trial by jury.

                          */s/ Randall K. Pulliam*
                          **CARNEY BATES & PULLIAM, PLLC**
Randall K. Pulliam (Texas Bar No. 24048058)
rpulliam@cbplaw.com
Hank Bates (*Admitted N.D. Texas*)
hbates@cbplaw.com
E. Lee Lowther III (*Admitted N.D. Texas*)
llowther@cbplaw.com
519 W. 7th St.
Little Rock, AR 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505