United States District Court
Southern District of Texas

**ENTERED**

February 08, 2022

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| URSULA N. WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-1900 |
| | § | |
| LAKEVIEW LOAN SERVICING, LLC, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] is Plaintiff's Motion for Class Certification under Federal Rule of Civil Procedure 23. (Dkt. No. 72.) Defendants oppose the motion. (Dkt. No. 77.) Based on a thorough review of the motion, evidence, and relevant law, the Court **RECOMMENDS** the Motion for Class Certification be **GRANTED IN PART** and **DENIED IN PART**.

### I.      BACKGROUND

Plaintiff Ursula N. Williams ("Plaintiff") filed this action on May 29, 2020 alleging Defendants Lakeview Loan Servicing, LLC ("Lakeview") and LoanCare, LLC ("LoanCare") breached her FHA-insured mortgage and violated the Texas Debt Collection Act ("TDCA") by charging fees to pay her mortgage by phone or online. (Dkt. No. 1.) Plaintiff alleges the collection of these "pay-to-pay" fees is not expressly authorized by her mortgage or the Department of Housing and Urban Development ("HUD") regulations—which govern FHA loans—and is therefore illegal. (*Id.* ¶¶ 4–10.)

---

[1] On November 17, 2020, the District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 45.)

Plaintiff obtained her FHA-insured mortgage in 2010 to purchase property located at 3281 Stampede Drive in Bryan, Texas, where she has since lived and operated several businesses. (Dkt. No. 4; Dkt. No. 77-30 at 51:15–53:2.) Plaintiff's mortgage—which is serviced by Lakeview and subserviced by LoanCare[2]—contains a fee provision stating "Lender may collect fees and charges authorized by the Secretary [of HUD]." (Dkt. No. 4 ¶ 8.) According to Plaintiff, however, LoanCare charged her $12 each time she paid her mortgage by phone without authorization by the HUD Secretary, totaling $480 between 2017 and 2020. (Dkt. No. 1 ¶¶ 67–68; Dkt. No. 77-1 ¶ 26.) Plaintiff paid these fees, despite being aware that she could pay by mail for free, because she appreciated having more control over her payment date. (Dkt. No. 77-30 at 107:5–108:2, 115:11–19.) LoanCare has since refunded Plaintiff most or all of the fees she paid. (Dkt. No. 77-30 at 102:1–15; Dkt. No. 79-1 at 15–16.)

On July 29, 2020, Lakeview filed an answer to Plaintiff's complaint and LoanCare filed a separate motion to dismiss the TDCA and breach of contract claims against it. (Dkt. Nos. 25, 27.) Plaintiff then voluntarily dismissed her breach of contract claim against LoanCare only. (Dkt. No. 35.) On December 22, 2020, the Court denied LoanCare's motion to dismiss the TDCA claim, finding Plaintiff's allegations sufficient under Rule 12(b)(6) and rejecting several of LoanCare's statutory interpretation arguments. (Dkt. No. 59.) Plaintiff's TDCA claims against LoanCare and Lakeview, as well as her breach of contract claim against Lakeview, still remain pending.

On April 2, 2021, Plaintiff moved for class certification on behalf of Texas homeowners with FHA-insured loans, serviced by Lakeview or LoanCare, who have paid pay-to-pay fees. (Dkt. No. 72.) Particularly, Plaintiff asks the Court to certify two classes as follows:

---

[2] The mortgage was originally issued and serviced by PHH Mortgage Corporation. Plaintiff is suing PHH Mortgage Corporation in a separate case. (*See* Case No. 20-CV-4018.)

> **Lakeview Class:** All persons in the United States (1) with an FHA-insured mortgage securing a property located in the State of Texas (2) originated or serviced by Lakeview and (3) subserviced by LoanCare and (4) who paid one or more Pay-to-Pay fee to LoanCare during the applicable statute of limitations period through the date a class is certified.
>
> **LoanCare Class:** All persons in the United States (1) with an FHA-insured mortgage securing a property located in the State of Texas (2) serviced or subserviced by LoanCare and (3) who paid one or more Pay-to-Pay fee to LoanCare during the applicable statute of limitations period through the date a class is certified.

(*Id.* at 2.) Plaintiff argues class certification is proper under Rule 23 because all putative class members have home loans with the same uniform fee provision—that "Lender may collect fees and charges authorized by the Secretary [of HUD]"—which she alleges makes pay-to-pay fees illegal. (*Id.* at 8–22.) According to Plaintiff, a class action is necessary in order to vindicate the rights of putative class members who may not otherwise litigate individually. (*Id.* at 20–22.)

Defendants oppose class certification altogether. (Dkt. No. 77.) Particularly, Defendants argue Plaintiff has not met her Rule 23 evidentiary burden of showing the mortgages of putative class members contain a uniform fee provision and, in fact, there are three categories of loans that differ substantially. (*Id.* at 10–15.) Defendants also argue there are too many individual defenses and damages issues to make class certification appropriate, including whether the mortgages constitute consumer debt and whether the fees constitute debt collection under the TDCA. (*Id.* at 15–23.) Finally, Defendants assert Plaintiff and her counsel cannot adequately represent the proposed class for various reasons, including that counsel solicited Plaintiff by mail and has filed various similar lawsuits across the country. (*Id.* at 26–28.)

The Court finds Plaintiff has met her burden for class certification as to the TDCA claims. Plaintiff has proven that a uniform fee covenant exists in the mortgages of putative class members, with the exception of mortgages executed before March 1, 1990, and that all requirements for class

certification under Rule 23(a) and 23(b)(3) have been met. The Court thus recommends that the class be certified as to the TDCA, with modification of the class definition to exclude borrowers with pre-1990 mortgages, and that Plaintiff and counsel be named to represent the class. However, the Court declines to evaluate certification as to breach of contract against Lakeview and orders Plaintiff to explain why the claim should not be dismissed *sua sponte* under Rule 12(b)(6).

## II.     LEGAL STANDARDS FOR CLASS CERTIFICATION

Rule 23 governs class certification. *See* FED. R. CIV. P. 23. "A case may proceed as a class action only if the party moving for certification demonstrates that it has met all four requirements of Rule 23(a)" and the requirements of either Rule 23(b)(1), 23(b)(2), or 23(b)(3). *McCormick v. 7-Eleven, Inc.*, No. 06-CV-127, 2009 WL 10704102, at *2 (N.D. Tex. Mar. 12, 2009). Rule 23(a) requires a party seeking class certification to demonstrate: (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 215–16 (5th Cir. 2012). Rule 23(b)(3), as relevant here, requires a party seeking class certification to demonstrate: (1) common questions of law or fact predominate over individual issues; and (2) a class action is the superior method for adjudicating the controversy. *Id.* at 216. Finally, Rule 23 contains an implied requirement that the class be ascertainable. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 & n.3 (5th Cir. 2007).

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotations omitted). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Id.* (quoting *Wal-Mart Stores, Inc.*

*v. Dukes*, 564 U.S. 338, 350 (2011)). The court must undertake a "rigorous analysis" and look beyond the pleadings to understand the claims, defenses, and relevant facts in determining whether the party seeking certification has met this burden. *Id.*; *McCormick*, 2009 WL 10704102, at *1. Such an analysis will frequently "entail some overlap with the merits of the plaintiff's underlying claim," as it "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Dukes*, 564 U.S. at 351 (quotations omitted). Still, "[c]ertification does not depend on showing that the plaintiffs will ultimately prevail on the merits of their claims." *ODonnell v. Harris Cty.*, No. 16-CV-1414, 2017 WL 1542457, at *2 (S.D. Tex. Apr. 28, 2017).

## III.    CERTIFICATION AS TO BREACH OF CONTRACT

Plaintiff's breach of contract claim against Lakeview is based on the theory that the fee provision in her mortgage prohibits pay-to-pay fees because the HUD Secretary has not authorized them. However, several courts in the Fifth Circuit have recently dismissed such claims under Rule 12(b)(6) based on the same fee provision and substantially the same factual allegations as here. *See Dees v. Nationstar Mortg., LLC*, 496 F. Supp. 3d 1043, 1050 (S.D. Tex. 2020); *Barnett v. Caliber Home Loans*, No. 19-CV-309, 2020 WL 5494414, at *5 (S.D. Tex. Sept. 10, 2020); *Caldwell v. Freedom Mortg. Corp.*, No. 19-CV-2193, 2020 WL 4747497, at *2 (N.D. Tex. Aug. 14, 2020). The Court here has not had the opportunity to decide this issue because Lakeview never filed a motion to dismiss and Plaintiff dropped her breach of contract claim against LoanCare.

Courts, however, have the power to dismiss claims *sua sponte* for failure to state a claim "as long as the procedure employed is fair," meaning plaintiff receives notice of the court's intention and has an opportunity to respond. *Anokwuru v. City of Houston*, 990 F.3d 956, 967 (5th Cir. 2021) (quotations omitted). The Court finds it necessary to address this issue before analyzing

whether class certification as to breach of contract is appropriate. Should Plaintiff wish to pursue her breach of contract claim against Lakeview, she must file a brief within two weeks of the District Judge's ruling on this Memorandum and Recommendation addressing why her allegations state a claim under Rule 12(b)(6). Lakeview may then respond within two weeks. Plaintiff's motion for class certification as to breach of contract should, therefore, be denied at this time.

## IV.     CERTIFICATION AS TO THE TDCA

The remaining issue is whether the Court should certify Plaintiff's proposed class as to the TDCA claims. "[T]he TDCA prohibits debt collectors from using wrongful practices in the collection of consumer debts." *Shular v. LVNV Funding LLC*, No. 14-CV-3053, 2016 WL 685177, at *4 (S.D. Tex. Feb. 18, 2016). In particular, section 392.303(a)(2) prohibits a debt collector from using unfair or unconscionable means in the collection of debt, including by "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless [it] is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." TEX. FIN. CODE § 392.303(a)(2). The Court finds that, with slight modification to the class definition, Plaintiff has met the requirements of Rule 23 as to the TDCA claims.

### A.  Implied Ascertainability Requirement

To satisfy the implied ascertainability requirement of Rule 23, a plaintiff must show the proposed class is identifiable and susceptible to precise definition. *John*, 501 F.3d at 445 n.3. This involves consideration of whether the class definition is overly broad and whether class members can be determined by objective criteria without substantial administrative difficulty. *See Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012); *Shelton v. Archer*, No. 05-CV-1263, 2007 WL 9735740, at *2 (S.D. Tex. Mar. 30, 2007). "However, the court need not know the identity of each class member before certification; ascertainability requires only that the

court be able to identify class members at some stage of the proceeding." *Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (quotations omitted).

The ascertainability analysis here requires the Court to first resolve whether the mortgages of putative class members contain a uniform fee provision, as the TDCA claims will ultimately involve examination of the underlying mortgages and whether they expressly authorize pay-to-pay fees.[3] Defendants argue there are three categories of loans with varying fee provisions:

> (1) Category 1 loans that state, "Lender may collect fees and charges authorized by the Secretary" and "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law;"
> (2) Category 2 loans that state only, "Lender may collect fees and charges authorized by the Secretary;" and
> (3) Category 3 loans that do not contain any uniform provisions.

(Dkt. No. 77 at 12–15.) Plaintiff argues that Category 1 and Category 2 loans should be treated as the same because both state "Lender may collect fees and charges authorized by the Secretary," a provision that was legally-required to be in all FHA-insured mortgages executed on or after March 1, 1990. (Dkt. No. 79 at 2–5.) Category 3 loans, according to Plaintiff, are different only because they were executed before March 1, 1990. (*Id.* at 5.)

Plaintiff has proven there is a uniform fee provision as to the mortgages executed on or after March 1, 1990. HUD regulations since then have required FHA-insured mortgages to contain a set of uniform covenants, including that the "Lender may collect fees and charges authorized by the Secretary." *See* 24 C.F.R. § 203.17(a)(2)(i)(A); Dep't of Housing and Urban Dev., Requirements for Single Family Mortgage Instruments, 54 FR 27596-01, 27599 (June 29, 1989). Both Category 1 and Category 2 loans contain this provision. Defendants do not explain

---

[3] *See Shular*, 2016 WL 685177, at *10 (considering whether plaintiff presented evidence of a form contract among putative class members in deciding whether class certification was appropriate for TDCA claims).

the significance of the additional sentence contained in Category 1 loans or how it changes interpretation of the fee provision. In fact, Defendants argue both categories of loans allow parties to enter into separate agreements authorizing pay-to-pay fees. (Dkt. No. 77 at 13, 15.) The content of Category 1 and Category 2 loans are sufficiently uniform.

However, the regulations do not require the same provision for loans executed before March 1, 1990. (Dkt. No. 79-1 at 6.) Plaintiff fails to identify any Category 3 loans that nonetheless contain similar provisions and, from the Court's own review of these loans, none do. (*See* Dkt. Nos. 77-8 to 77-12.) The proposed class definitions are therefore overly broad, and the Court recommends they be modified as follows to exclude Category 3 loans: [4]

> **Lakeview Class:** All persons in the United States (1) with an FHA-insured mortgage *executed on or after March 1, 1990* securing a property located in the State of Texas (2) originated or serviced by Lakeview and (3) subserviced by LoanCare and (4) who paid one or more Pay-to-Pay fee to LoanCare during the applicable statute of limitations period through the date a class is certified.

> **LoanCare Class:** All persons in the United States (1) with an FHA-insured mortgage *executed on or after March 1, 1990* securing a property located in the State of Texas (2) serviced or subserviced by LoanCare and (3) who paid one or more Pay-to-Pay fee to LoanCare during the applicable statute of limitations period through the date a class is certified.

With these modifications—which the Court uses in the remainder of its Rule 23 analysis—the proposed class definitions are sufficiently tailored, precise, and based on objective criteria. [5]

---

[4] Courts have discretion to limit or modify class definitions if necessary. *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004); *see McWaters v. Fed. Emergency Mgmt. Agency*, 237 F.R.D. 155, 163 (E.D. La. 2006) (modifying class definition because it was overly broad).

[5] Defendants argue the proposed class is overly broad because it includes borrowers who were part of court-approved settlements with other loan servicers who serviced the loans at issue before LoanCare or Lakeview. (Dkt. No. 77-1 ¶¶ 32–37.) However, Defendants admit they do not have access to the information needed to determine the extent or specifics of any overlap with this suit. (*Id.* ¶ 37.) The Court cannot deny certification on this basis.

Defendants argue that it is not administratively feasible to identify borrowers that fit these definitions and a burdensome loan-by-loan investigation would be needed to determine class members. (Dkt. No. 77 at 29–30.) This argument lacks merit. Defendants have testified that they can query their own software data to identify borrowers that fit the class criteria. (Dkt. No. 72-3 at 154 (explaining how software can query property located in certain state where borrower paid one-time payment fee), 155 (explaining that software can query loans by loan type and loan servicer).) Indeed, Defendants have already created and produced a spreadsheet that does so. (*See id.* at 155–56; Dkt. No. 77-1 ¶ 40.) Any difficulty in reviewing the data—which can only be attributed to Defendants' own bookkeeping practices[6]—does not render it subjective or incapable of precise definition. *See Earl v. Boeing Co.*, 339 F.R.D. 391, 423 (E.D. Tex. 2021) (finding ascertainability requirement met even if determining class members was "ultimately tedious and laborious"); *Cleven v. Mid-Am. Apartment Cmtys., Inc.*, 328 F.R.D. 452, 467 (W.D. Tex. 2018) ("Manual review does not preclude ascertainability."), *rev'd on other grounds*, 20 F.4th 171 (5th Cir. 2021). Plaintiff has met Rule 23's implied ascertainability requirement.

### B. Rule 23(a) Requirements

#### 1.    Numerosity

To satisfy the numerosity requirement of Rule 23(a), a plaintiff must show that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "[A] plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members" and cannot rely on mere speculation to meet this requirement. *Holmes v. Serv. Corp. Int'l*, No. 10-CV-4841, 2014 WL 3046971, at *5 (S.D. Tex. July 3, 2014) (quotations

---

[6] *Cf. Eatmon v. Palisades Collection LLC*, No. 08-CV-306, 2011 WL 147680, at *4 (E.D. Tex. Jan. 18, 2011) ("Defendant's lack of records of its own demand letters should not be a basis for precluding an action based on the allegedly illegal demand letters.").

omitted). However, a plaintiff "need not show the precise number of persons in the class . . . if such a conclusion is clear from reasonable estimates." *Shular*, 2016 WL 685177, at *4. Factors such as the geographical dispersion of the class and the ease with which class members can be identified are also relevant to whether the class is so numerous as to make joinder impracticable. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

Here, the LoanCare Class consists of 67,919 borrowers on 47,933 loans and the Lakeview Class consists of 53,728 borrowers on 37,882 loans. (Dkt. No. 72-3 at 97–98.)[7] While these figures are based on a four-year statute of limitations, which Defendants dispute, they are similar when based on a two-year statute of limitations. (*See id.* (LoanCare Class with 61,493 borrowers on 43,330 loans and Lakeview Class with 50,463 borrowers on 35,519 loans).) And while these numbers include Category 3 loans, those loans were "only a miniscule percentage" of the proposed class and thus their exclusion does not preclude numerosity. (Dkt. No. 79 at 5.) The class definition covers members with property located throughout Texas, making joinder impracticable, and class members are readily identifiable, as discussed above. Plaintiff has satisfied the numerosity requirement. *See, e.g.*, *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding class of 100 to 150 members satisfies the numerosity requirement and noting the geographical dispersion of class members supported the finding).

## 2. Commonality

To satisfy the commonality requirement of Rule 23(a), a plaintiff must show that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). In other words, the claims of named plaintiff and class members "must depend upon a common contention" that is

---

[7] Plaintiff cites different figures based on data provided by Defendants. Those figures, however, include all types of loans, not just FHA loans. (*See* Dkt. No. 72-3 at 96–97.)

"capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350; *see Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012). "What matters to class certification is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (quotations and alterations omitted). If it meets these requirements, "even a single common question will do." *Id.* at 359 (quotations and alterations omitted).

Here, there are at least two central questions common to all putative class members: (1) whether the fees charged by Defendants to make monthly mortgage payments by phone or online are expressly authorized by the uniform contract provision; and (2) whether such fees are otherwise legally chargeable under the TDCA by, for example, the "point-of-sale" contracts made during each transaction. Both of these questions are capable of class-wide resolution. Either the uniform contract provision authorizes pay-to-pay fees or it does not. Either the pay-to-pay fees are otherwise legally chargeable because they constitute separate contracts or they are not. These questions are not so generic as to conflict with the Supreme Court's commonality standards, as Defendants argue. *See Dukes*, 564 U.S. at 349 (holding questions that are fundamentally different than those posed here—such as "Is that an unlawful . . . practice?" and "What remedies should we get?"—would be insufficient to meet commonality). Nor are the merits of the TDCA claims relevant to commonality. *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (explaining the commonality requirement does not require plaintiffs to prove the common contention is correct, only that it is common). Plaintiff has satisfied the commonality requirement.

### 3.  Typicality

To satisfy the typicality requirement of Rule 23(a), a plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (quotations omitted). And while the presence of unique defenses against the named plaintiff can be relevant, *see Warren v. Rsrv. Fund, Inc.*, 728 F.2d 741, 747 (5th Cir. 1984), this does not necessarily defeat typicality. *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 137 (5th Cir. 2005). Instead, "the critical inquiry . . . is whether the defenses . . . may be a major focus of the litigation." *Guenther v. BP Ret. Accumulation Plan*, No. 16-CV-995, 2021 WL 1216377, at *7 (S.D. Tex. Mar. 12, 2021) (quotations omitted), *report and recommendation adopted*, 2021 WL 1215851 (Mar. 31, 2021).

Here, Plaintiff's TDCA claim and those of the proposed class members are based on the same allegedly unlawful practice of collecting pay-to-pay fees for FHA-insured mortgages with materially indistinguishable fee provisions. They are based on the same legal theories and substantially the same facts and, therefore, have the same essential characteristics necessary to establish typicality. *See, e.g.*, *Earl*, 339 F.R.D. at 420 (finding typicality met when named plaintiff and class members "share[d] in the same, fundamental aspects of the action, *i.e.*, Defendants' alleged course of conduct and the underlying remedial theory"); *Boles v. Moss Codilis, LLP*, No. 10-CV-1003, 2012 WL 12861080, at *10, 15 (W.D. Tex. Jan. 17, 2012) (finding typicality met when named plaintiff and class members had the same theory of liability and same theory of relief under the TDCA and FDCPA).

Defendants' attempt to distinguish Plaintiff's TDCA claim from those of the class lacks merit. (*See* Dkt. No. 77 at 24–26.) For example, Defendants' argument that Plaintiff's claim is not typical because she received a refund fails to consider that Plaintiff received a refund only after she filed the lawsuit and that she seeks other remedies such as injunctive relief. (*See* Dkt. No. 79-1 at 15–16.)[8] Defendants' argument that Plaintiff's claim is not typical because she paid fees within the past two years when others did not fails to consider that the class includes only those that paid fees during the applicable statute of limitations and that Plaintiff paid fees within both potential limitations periods. (Dkt. No. 77-1 ¶ 26.) In any event, none of the issues Defendants identify are likely to be a main focus of litigation. *See Guenther*, 2021 WL 1216377, at *7 (finding defenses unique to named plaintiff's claims such as release, waiver, and statute of limitations did not defeat typicality because there was no evidence these issues would take significant time or distract the named plaintiff from the class action). Plaintiff's claims are typical of the proposed class.

### 4.   Adequacy of Representation

To satisfy the adequacy requirement of Rule 23(a), a plaintiff must show that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). Courts consider the "zeal and competence" of counsel and "the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Id.* (quotations and alterations omitted). Courts also consider "the amount of contact

---

[8] *See Vine v. PLS Fin. Servs., Inc.*, 331 F.R.D. 325, 334 n.9 (E.D. Tex. 2019) (noting refund likely would not defeat typicality, as "[t]he Fifth Circuit has warned courts against allowing defendants to attempt to pick off individual plaintiffs before class certification by tendering to the named plaintiffs the full amount of their personal claims each time suit is brought as a class action") (quotations and alterations omitted), *aff'd*, 807 F. App'x 320 (5th Cir. 2020).

the proposed class representative has with the attorneys, the class representative's involvement in reviewing and preparing pleadings, [and] the class representative's involvement in answering and propounding discovery," among other factors. *Mistetsky v. Bilek*, No. 09-CV-2195, 2010 WL 11583151, at *6 (S.D. Tex. Nov. 24, 2010), *report and recommendation adopted*, 2010 WL 11583104 (Dec. 9, 2010).

Plaintiff is actively involved and maintains a sufficient understanding of this litigation. Plaintiff researched counsel before she hired them and communicates with them on a regular basis. (Dkt. No. 72-1 at 19–20.) She reviewed the complaint before it was filed, participated in the discovery process, prepared and sat for an all-day deposition, and is willing to attend all court hearings. (*Id.*) Although Plaintiff does not necessarily have knowledge equivalent to opposing counsel, she has sufficient understanding of the case. (*See, e.g.*, Dkt. No. 79-1 at 27–30.)[9] Defendants' argument that Plaintiff is inadequate because she was untruthful on the phone with LoanCare as to whether she was recording the call and because she accumulated late fees on her mortgage lacks merit. (Dkt. No. 77 at 27.) These issues, even if true, are nowhere near the level of impropriety that precludes adequacy. *See Britton v. Servicelink Field Servs., LLC*, No. 18-CV-41, 2019 WL 3400683, at *5 (E.D. Wash. July 26, 2019) (finding plaintiff inadequate because she lied about occupying the property at issue, admitted she significantly vandalized the property, and previously used the property to grow marijuana).

Proposed class counsel have experience and competence in consumer litigation and class actions. Attorney James Kauffman from Bailey & Glasser LLP has been appointed class counsel in four other actions challenging loan servicing fees and has achieved class settlement in at least

---

[9] *See Berger*, 257 F.3d at 483 ("[C]lass representatives need not be legal scholars and are entitled to rely on counsel."); *Vine*, 331 F.R.D. at 335 (explaining class representatives need only a general understanding of the cause of action and alleged wrongdoing).

three of those actions. (Dkt. No. 72-3 at 102–03.) Attorney Randall Pulliam from Carney Bates & Pulliam, PLLC has been lead counsel in dozens of nationwide class actions and his firm has expertise in class action litigation involving consumer protection. (*Id.* at 112–33.) Defendants' argument that these attorneys are inadequate because they solicited Plaintiff lacks merit. (Dkt. No. 77 at 26.) Solicitation by counsel is generally not determinative and does not preclude adequacy here because Plaintiff researched the attorneys and law firms before she hired them. *See In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 108 (E.D.N.Y. 2012); *Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529, 535 (N.D. Tex. 2005) (noting the relevance of a plaintiff's investigation of counsel when plaintiff had been solicited).

Defendants' argument that counsel is inadequate because the firms are pursuing multiple similar class actions—which raises concerns about inconsistent rulings, wasted resources, and potential conflicts—similarly lacks merit. (Dkt. No. 77 at 27–28.) Defendants provide a list of five other similar cases that the firms have brought against Lakeview or LoanCare but focus on the overlap among those cases rather than the overlap between those cases and this one. (*Id.*; *see* Dkt. No. 77-14 ¶ 24.) Of the five cases Defendants cite, none involve the TDCA and none would involve the same class members as here. (*See* Dkt. No. 77-14 ¶ 24.)[10] It is, therefore, fundamentally different than the cases Defendants use to support their argument. *See Bund v. Safeguard Props. LLC*, No. 16-CV-920, 2018 WL 5112642, at *7 (W.D. Wash. Oct. 19, 2018) (noting concern when factual and legal issues between cases were the same and class members would therefore overlap).

Plaintiff and counsel will thus adequately protect the interests of the class. *See, e.g.*, *Mallory v. Lease Supervisors, L.L.C.*, No. 16-CV-248, 2017 WL 1281555, at *7 (W.D. Tex. Jan.

---

[10] One of these cases did involve a national FDCPA class, but it has been voluntarily dismissed. (Dkt. No. 77-14 ¶ 24.)

13, 2017) (finding adequacy requirement met when plaintiff was involved in litigation, counsel had significant experience in the area, and defendant's assertion as to conflicts between class members was speculative), *report and recommendation adopted*, 2017 WL 1287880 (Feb. 2, 2017). Plaintiff has met each of the four Rule 23(a) requirements for class certification.

### C.  Rule 23(b)(3) Requirements

#### 1.  Predominance

To satisfy the predominance requirement of Rule 23(b)(3), a plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). This involves an inquiry into how the case would be tried on the merits, which in turn "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) (quotations omitted). The predominance inquiry is more demanding than the commonality inquiry. *Id.* at 301. However, "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper . . . even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

As explained above, the TDCA prohibits a debt collector from collecting or attempting to collect fees incidental to a debt unless the fee is expressly authorized by the agreement creating the debt or legally chargeable to the consumer. TEX. FIN. CODE § 392.303(a)(2). The elements of a TDCA claim are: (1) the debt is a consumer debt; (2) the defendant is a debt collector within the meaning of the TDCA; (3) the defendant committed a wrongful act against plaintiff in violation of the TDCA; and (4) the plaintiff was injured by the defendant's wrongful act. *Rentfrow v. JP*

*Morgan Chase Bank, Nat'l Ass'n*, No. 19-CV-3507, 2020 WL 1893558, at *5 (S.D. Tex. Mar. 25, 2020), *report and recommendation adopted*, 2020 WL 1891848 (Apr. 16, 2020).

The common issues involved in determining whether Defendants here violated the TDCA predominate. The same evidence for all class members will be used to determine whether the fees are expressly authorized because the mortgages at issue involve the same or substantially similar fee provisions. The same evidence will also be used to determine whether the fees are otherwise legally chargeable by point-of-sale contracts—or whether these individual contracts are even relevant at all—because Defendants employed a uniform policy and made uniform disclosures to borrowers in collecting the fees. These central issues are subject to generalized, class-wide proof. *See Boles*, 2012 WL 12861080, at *12–15 (finding common issues predominate in FDCPA and TDCA claims when based on the same allegedly misleading letter sent to class members, making defendants either liable to all class members or to none); *Brown v. Consumer L. Assocs., LLC*, 283 F.R.D. 602, 615 (E.D. Wash. 2012) (finding common issues predominate in determining whether debt service companies violated the law in collecting excess fees, as they were "overarching questions which can be answered rather mechanically").

Defendants argue there are individual issues as to whether each mortgage is a consumer debt under the TDCA, particularly whether each borrower is using the property as a home or for business purposes. (Dkt. No. 77 at 19–22.) However, this ignores the requirement that borrowers on FHA-insured mortgages occupy the property as their principal residence for at least one year (Dkt. No. 79-1 at 9) and the legal authority explaining the nature of a loan should be determined at the time of issuance by the "precise transaction for which the loan proceeds were used." *Garcia v. Jenkins Babb, L.L.P.*, 569 F. App'x 274, 275–76 (5th Cir. 2014). It also ignores the fact that LoanCare services only residential loans and any borrowers that obtained multi-use loans can be

identified through Defendants' comprehensive database. (Dkt. No. 72-3 at 141, 156.) The nature of each loan in this case is not an individual issue that predominates over class-wide issues. *See McCormick*, 2009 WL 10704102, at *7 (finding whether checks at issue were consumer debt did not predominate because defendant's computer system sorted checks on this basis and the class included only the consumers that used personal checks).[11]

Defendants also argue that "loan servicing" is not the same as "debt collection" and that determining whether the collection of pay-to-pay fees constitutes debt collection under the TDCA presents individualized questions for each borrower. (Dkt. No. 77 at 22–23.) This is because, according to Defendants, pay-to-pay fees on FHA-insured loans cannot constitute debt collection unless the borrower has defaulted. (*Id.* at 22.) However, the Court determined in its previous ruling that there is no room for this interpretation of the TDCA because neither the definition of "debt collection" nor § 392.303(a)(2) contains such a requirement. (Dkt. No. 59 at 7–8.) The cases Defendants cite in support of this theory do not interpret the TDCA. (*See* Dkt. No. 77 at 23.) In any event, whether payments by borrowers who are current on their mortgages constitute "debt collection" under the TDCA is a matter of statutory interpretation that can be decided on a class-wide basis.

To the extent any of Defendants' arguments against certification of the breach of contract claim apply to the TDCA, none have merit. Whether individual class members voluntarily agreed to pay the fees or could have chosen free methods of payment is irrelevant where, as here, the

---

[11] None of the cases Defendants cite for the proposition that the nature of a loan is a fact issue for the jury involve only FHA-insured mortgages with occupancy requirements. *See, e.g.*, *Henson v. Fid. Nat'l Fin. Inc.*, 300 F.R.D. 413, 420 (C.D. Cal. 2014); *Toldy v. Fifth Third Mortg. Co.*, No. 09-CV-377, 2011 WL 4634154, at *3 (N.D. Ohio Sept. 30, 2011). Likewise, Defendants' assertion there may be occupancy fraud or waiver of the FHA occupancy requirement does not preclude certification. *See Boles*, 2012 WL 12861080, at *13 (finding "no reason to fear" that fraud would cause class action to degenerate into a series of mini-trials).

theory is that the fees themselves are illegal. *Cf. McCormick*, 2009 WL 10704102, at *5 (finding that "whether [plaintiff] is correct that one cannot authorize a supposedly unreasonable service charge in states which have a reasonableness requirement" is a legal question capable of class-wide resolution).[12] Similarly, Plaintiff's proposed method of calculating damages based on Defendants' own spreadsheet does not preclude certification, even if some individual issues are involved. *See In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 142 (E.D. La. 2013) ("It is well-settled . . . that the necessity of calculating damages on an individual basis does not defeat predominance."); *Vine v. PLS Fin. Servs., Inc.*, 331 F.R.D. 325, 334 n.7 (E.D. Tex. 2019) (finding any need to offset damages would not impact the predominance analysis), *aff'd*, 807 F. App'x 320 (5th Cir. 2020). Common issues, therefore, predominate in this case.

### 2.   Superiority

To satisfy the superiority requirement of Rule 23(b)(3), a plaintiff must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). This analysis involves consideration of factors such as: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.* The superiority requirement "was designed not solely as a means for assuring legal assistance in the

---

[12] These issues may not even impact the TDCA analysis at all. *See Barnett*, 2020 WL 5494414, at *3 ("[T]he voluntary-payment doctrine is inapplicable to [the TDCA] because the statute creates a private right of action even if payment is made voluntarily."); *Caldwell*, 2020 WL 4747497, at *4 ("The TDCA provides no protection for lenders merely because their collection of a fee was dependent upon a borrower's selection of the lender's fee-based payment method.").

vindication of small claims but [also] to achieve the economies of time, effort, and expense." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 749 n.27 (5th Cir. 1996) (quotations omitted).

Here, the Rule 23(b)(3) factors weigh in favor of finding a class action superior to various individual cases. First, the relatively small amount of money damages at issue makes prosecution of individual cases less likely, despite the fact the TDCA allows individuals to recover attorney's fees. *See Eatmon v. Palisades Collection LLC*, No. 08-CV-306, 2011 WL 147680, at *12 (E.D. Tex. Jan. 18, 2011); *McCormick*, 2009 WL 10704102, at *7–8. Second, Defendants have not identified any cases against them under the TDCA brought by class members. *See Vine*, 331 F.R.D. at 341. Third, this is a particularly desirable forum because each of the mortgages involves property in Texas and only Texas law is at issue. *See id.* Fourth, managing the class action does not appear unusually difficult, as many of the issues in the case involve statutory interpretation that can be determined on a class-wide basis with class-wide evidence. *See id.* Of course, "there is a possibility that some damages calculations would be burdensome. But the economies of class treatment of the numerous common issues weigh in favor of class treatment." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 299 (5th Cir. 2001).

Defendants argue a class action is not superior because "the alternative to certification may be that there are no suits at all," as many class members may value the ability to pay online or by phone. (Dkt. No. 77 at 28.) But class members who value paying online or by phone do not necessarily approve of paying fees to do so, and Defendants fail to otherwise explain why class members would not want to pursue their claims. Defendants also argue class action is not superior because this case involves the highly-regulated mortgage industry which has not prohibited pay-to-pay fees through legislation. (*Id.* at 29.) But the question here is not whether the mortgage industry prohibits the pay-to-pay fees; the question is whether the TDCA does. Finally, Defendants

argue a class action is not superior because "Plaintiff seeks millions yet suffered no harm." (*Id.*) This assertion is entirely conclusory and ignores the fact that being charged illegal fees may be an injury in and of itself. *See Barnett*, 2020 WL 5494414, at \*5; *see also McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 479 (5th Cir. 2015).

The Court finds a class action here is necessary to "vindicate[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338 (1980). A class action here would also achieve the economies of time, effort, and expense when thousands of individual lawsuits would not. *See Castano*, 84 F.3d at 749 n.27. It is the superior method of fairly and efficiently adjudicating this controversy.

*          *          *

Plaintiff has met all of the Rule 23 requirements under the modified class definitions and class certification is, therefore, appropriate as to the TDCA claims against Lakeview and LoanCare.[13] Plaintiff should be named lead plaintiff and Attorneys James Kauffman from Bailey & Glasser LLP and Randall Pulliam from Carney Bates & Pulliam, PLLC should be appointed class counsel. Should the District Judge adopt this Memorandum and Recommendation, Defendants shall within 30 days produce a spreadsheet containing each class member's name, mailing and email addresses, address of the property at issue, the date of the mortgage, and whether he or she belongs to the Lakeview or LoanCare class. (*See* Dkt. No. 72-4.) Class counsel may then issue notice via mail or email.

---

[13] The Court did not consider the merits of Plaintiff's TDCA claim except to the extent necessary to make a Rule 23 determination. Defendants' various arguments as to the merits— which may ultimately prevail—can be considered on summary judgment.

## V.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Plaintiff's Motion for Class Certification (Dkt. No. 72) be **GRANTED IN PART** and **DENIED IN PART** as described above.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on February 8, 2022.

Sam S. Sheldon
United States Magistrate Judge

22 / 22