United States District Court
Southern District of Texas
**ENTERED**
March 30, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| URSULA N. WILLIAMS, | § | CIVIL ACTION NO. |
| Plaintiffs, | § | 4:20-CV-01900 |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| LAKEVIEW LOAN SERVICING LLC and LOANCARE LLC, | § | |
| Defendants. | § | |

ORDER ADOPTING
MEMORANDUM AND RECOMMENDATION

The Magistrate Judge recommends that the motion by Plaintiff Ursula Williams for class certification as to the Texas Debt Collection Act claim be granted as modified, and class certification as to the breach of contract claim be denied without prejudice to refiling. Dkt 86. The objections by Defendants are overruled. Dkt 89. The memorandum and recommendation of the Magistrate Judge is adopted as the opinion and order of this Court.

1. Background

Plaintiff Ursula Williams obtained a Federal Housing Authority-insured mortgage in 2010 for property located in Bryan, Texas. Her mortgage is serviced by Defendant Lakeview Loan Servicing LLC and subserviced by Defendant LoanCare LLC. Dkt 86 at 2.

LoanCare allows mortgagors to make payments on their loans via mail, phone (with a live agent or an automated system), and website portal. Each option except payment by mail requires the mortgagor to remit a *pay-to-pay* fee. Dkt 77 at 13. Williams preferred to pay by

automated phone system. And LoanCare charged her a $12 fee every time she made such payments. These fees totaled $480 between 2017 and 2020. Dkt 77-1 at 8–9.

Williams brought this action on May 29, 2020. She contends that these pay-to-pay fees breached her mortgage contract and violated the Texas Debt Collection Act. Dkt 1.

Defendants refunded Williams $456 upon the outset of this litigation. Dkt 79-1 at 16; Dkt 86 at 2. LoanCare filed a motion to dismiss. Dkt 27. Plaintiff voluntarily dismissed the breach of contract claim against LoanCare, and the motion was denied as to the TDCA claim. Dkt 35 & 59. The case was then transferred to Judge Sam S. Sheldon for full pretrial management pursuant to 28 USC § 636(b)(1)(A) and (B) and Rule 72 of the Federal Rules of Civil Procedure. Dkt 45.

Williams now seeks certification of two classes:

*Lakeview Class*: All persons in the United States (1) with an FHA-insured mortgage securing a property located in the State of Texas (2) originated or serviced by Lakeview and (3) subserviced by LoanCare and (4) who paid one or more Pay-to-Pay fee to LoanCare during the applicable statute of limitations period through the date a class is certified.

*LoanCare Class*: All persons in the United States (1) with an FHA-insured mortgage securing a property located in the State of Texas (2) serviced or subserviced by LoanCare and (3) who paid one or more Pay-to-Pay fee to LoanCare during the applicable statute of limitations period through the date a class is certified.

Judge Sheldon issued a Memorandum and Recommendation on February 8, 2022, recommending that class certification as to the breach of contract claim be denied without prejudice to refiling, and that class

certification as to the TDCA claim be granted as modified. Dkt 86. Defendants filed timely objections. Dkt 89.

2. Legal standard

The district court conducts a *de novo* review of those conclusions of a magistrate judge to which a party has specifically objected. See 28 USC § 636(b)(1)(C); *United States v Wilson*, 864 F2d 1219, 1221 (5th Cir 1989). To accept any other portions to which there is no objection, the reviewing court need only satisfy itself that no clear error appears on the face of the record. See *Guillory v PPG Industries Inc*, 434 F3d 303, 308 (5th Cir 2005), citing *Douglass v United Services Automobile Association*, 79 F3d 1415, 1420 (5th Cir 1996); see also FRCP 72(b), advisory committee note (1983).

District court review isn't intended to be a second bite at the apple. See *Freeman v County of Bexar*, 142 F3d 848, 852 (5th Cir 1998). Rule 72 instead allows a party to "file specific written objections to the proposed findings and recommendations." This means that objections must *specifically* identify those findings to which objections are being made and provide argument with citations as to why the Magistrate Judge purportedly erred. *United States v Ervin*, 2015 WL 13375626, *13 (WD Tex) (collecting cases); *United States v Charles*, 2010 WL 11707712, *1 (SD Tex); *Harbolt v Quarterman*, 2009 WL 3496290, *1 & n 1 (ND Tex). A district court needn't consider frivolous, conclusive, or general objections. *Oubre v Schlumberger Ltd*, 2016 WL 5334627, *1 (SD Tex), citing *Mosley v Quarterman*, 306 F Appx 40, 42 n 2 (5th Cir, *per curiam*), and *Nettles v Wainwright*, 677 F2d 404, 410 (5th Cir 1982), overruled on other grounds by *Douglass*, 79 F3d 1415 (5th Cir 1996); *Jones v Bank of New York Mellon*, 2015 WL 5725196, *1 (SD Tex); *Mejia v Davis*, 2017 WL 2274486, *1 n 2 (SD Tex).

3. Analysis

a. Objections as to commonality

The mortgages of all putative class members contain a clause stating that "Lender may collect fees and charges authorized by the Secretary" of the Department of Housing

3

and Urban Development (referred to as the *fee clause*). Dkt 89 at 9. Defendants acknowledge this, but they object to the finding that the mortgages at issue aren't materially different. Id at 9–10. Specifically, they contend that there are two categories of mortgages at issue, each with different terms. And they suggest that these differences vitiate commonality. Id at 9, 14.

*First*, *category one* mortgages contain an additional clause that states, "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." Dkt 89 at 9. Defendants suggest that this addition means *category one* and *category two* mortgages materially differ. To the contrary, the putative class doesn't allege that Defendants charged fees that were expressly prohibited by the security instrument or law. They instead argue that the fee clause doesn't expressly authorize pay-to-pay fees, as required by the TDCA. Dkt 1 ¶ 4; Dkt 90 at 11; see also Tex Finance Code § 392.303. This additional provision isn't material to that dispute.

*Second*, category one mortgages contain a clause that states, "All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract." Dkt 77-2 at 11. Category two mortgages don't contain such a clause, but they do contain prefatory language stating in pertinent part, "This Security Instrument secures to Lender . . . the performance of Borrower's covenants and *agreements* under this Security Instrument and the Note." Dkt 72-1 at 6 (emphasis added). True, this language differs. But both clauses go to the affirmative defense that putative class members entered point-of-sale contracts when they remitted the pay-to-pay fees. Dkt 86 at 8, 11. The clauses thus don't affect central issues of this suit, such as whether the TDCA applies, whether the fee clause expressly authorized pay-to-pay fees, or even whether the TDCA allows for point-of-sale contracts. See *Tyson Foods Inc v*

4

*Bouaphakeo*, 577 US 442, 453 (2016); *Eatmon v Palisades Collection LLC,* 2011 WL 147680, *8 (ED Tex).

*Third,* category one mortgages contain a provision that states, "Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to the Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action." Dkt 77-2 at 12. Class members with category one mortgages may need to provide notice prior to joining as class members—should the Court determine that this provision is even applicable. See Dkt 90 at 12; compare *Schmidt v Wells Fargo Home Mortgage*, 2011 WL 1597658, *3 (ED Va) (collecting cases) with *Kurzban v Specialized Loan Servicing LLC*, 2018 WL 1570370, *3 (SD Fla) (collecting cases). But this provision doesn't ultimately affect the merits of their claims once they comply.

Defendants raise two additional objections related to commonality.

*First*, Defendants object that the Magistrate Judge failed to adequately address the effect of potential third-party modifications. Dkt 89 at 11–12; see also Dkt 86 at 8 n 5. They specifically contend that "putative class loans came to LoanCare directly from PHH/Ocwen." Dkt 89 at 11. And they argue that "thousands of Ocwen/PHH borrowers modified mortgages in the ordinary course and in the '*McWhorter* settlement.'" Ibid. To the contrary, HUD regulations require all loans at issue to contain the fee clause, which can't be modified. 24 CFR § 203.17; 54 Fed Reg 27596-01, 27599 (1989). Consequently, though a modification could *theoretically* affect recovery by individual mortgagors, this potential doesn't undermine the common legal questions that arise from the inclusion of the fee clause in all mortgages at issue.

*Second,* Defendants object to the determination that

5

differences in payment methods don't pose a barrier to class certification. Dkt 89 at 15. Again, this issue goes to the affirmative defense that mortgagors entered point-of-sale contracts when paying fees. It doesn't affect the core legal theories asserted by Williams and the putative class members.

b. Objections as to predominance

*First*, Defendants object that the Memorandum and Recommendation "errs in assuming each borrower has 'consumer debt.'" Dkt 89 at 15. Specifically, they argue that the issue can't be determined without individualized proof. Ibid. To the contrary, Texas Financial Code § 392.001 defines *consumer debt*, with emphasis added, as "an obligation, or an alleged obligation, primarily for *personal, family, or household purposes* and arising from a transaction or alleged transaction." "When determining the type of debt at issue for the purposes of the [TDCA], courts focus on the precise transaction for which the loan proceeds were used, not the purpose for which an account was opened or the label of the ongoing obligation." *Garcia v Jenkins Babb LLP*, 569 F Appx 274, 276–77 (5th Cir 2014); *Riviere v Banner Chevrolet Inc,* 184 F3d 457, 462 (5th Cir 1999); *Willis v Portfolio Recovery Associates LLC*, 2019 WL 2565243, \*2 (WD Tex). All FHA-insured mortgages require the mortgagor to occupy the property purchased with the funds as his or her principal residence for at least the first year of the loan. Dkt 79-1 at 9; Dkt 79 at 18. Consequently, every borrower of an FHA-insured mortgage necessarily uses the loan proceeds for household purposes. These mortgages therefore may be considered consumer debt. See *Miller v McCalla, Raymer, Padrick, Cobb, Nichols, & Clark LLC*, 214 F3d 872, 874–75 (7th Cir 2000); see also *Calogero v Shows, Cali & Walsh LLP*, 970 F3d 576, 581 (5th Cir 2020); *Eatmon*, 2010 WL 1189571 at \*6.

*Second*, Defendants object to the finding that an interpretation of the *debt collection* requirement of the TDCA can be determined on a class-wide basis. Dkt 89 at 17. To the contrary, though *servicing* isn't "synonymous with" *collecting*, whether LoanCare engaged in servicing or

6

collecting when borrowers remitted the pay-to-pay fees is a class-wide question of law. Ibid; see also Dkt 59 at 6.

*Third,* Defendants object to the finding that the voluntary-payment doctrine is inapplicable. Dkt 86 at 18–19 & n 12; Dkt 89 at 18. Defendants primarily rely on *BMG Direct Marketing Inc v Peake* for the contention that voluntary payment may be grounds for decertification. 178 SW3d 763, 773 (Tex 2005). But in that very case, the Texas Supreme Court noted that "the voluntary-payment rule would not apply to situations in which the Legislature or common law has provided a right of recovery even though payment is voluntary." Id at 776 n 9. The TDCA provides such a right. *Dees v Nationstar Mortgage LLC*, 496 F Supp 3d 1043, 1049 (SD Tex); *Barnett v Caliber Home Loans*, 2020 WL 5494414, *3 (SD Tex).

*Fourth*, Defendants object to the finding that "Plaintiff's proposed method of calculating damages based on Defendants' own spreadsheet does not preclude certification, even if some individual issues are involved." Dkt 86 at 19; Dkt 89 at 19. Specifically, Defendants contend that the Magistrate Judge confused arguments addressing liability with arguments addressing damages. Dkt 89 at 19. True, *liability issues* may not be proven with the data spreadsheets at issue. And calculating damages may be individualized. But Defendants don't articulate how these possibilities affect the ultimate recommendation that the class be certified. *Ervin*, 2015 WL 13375626 at *13 (collecting cases); *Charles*, 2010 WL 11707712 at *1; *Harbolt*, 2009 WL 3496290 at *1 & n 1.

*Fifth*, Defendants contend that the Memorandum and Recommendation "ignores bankruptcy issues." Dkt 89 at 19. But bankruptcy is not a unique issue to this class. See *Eatmon*, 2011 WL 147680 at *7; *Wilborn v Dun & Bradstreet Corp*, 180 FRD 347, 356 (ND Ill 1998).

*Sixth*, Defendants object that the Memorandum and Recommendation "fails to consider varying contract terms, individual modification, and notice-and-cure requirements, as well as waiver, mitigation of damages, and release." Dkt 86 at 20. These arguments are addressed above. At most,

these individualized issues serve as affirmative defenses, a secondary matter in this litigation. And the common question of law—namely, the legality of the pay-to-pay fees—predominates over these individualized issues. See *Guenther v BP Retirement Accumulation Plan,* 2021 WL 1216377, \*7 (SD Tex).

### c. Objections as to typicality

*First,* Defendants object to the finding that the $456 refund to Williams doesn't make her atypical. Dkt 89 at 20. To the contrary, a class action doesn't become moot "upon tender to the named plaintiffs of their personal claims" when the plaintiff is diligently pursuing class certification. *Serrano v Customs and Border Patrol*, 975 F3d 488, 492 n 1 (5th Cir 2020), quoting *Zeidman v J Ray McDermott & Co,* 651 F2d 1030, 1051 (5th Cir 1981). Here, Williams received her refund after she filed her complaint, which included class allegations. Dkt 86 at 13; Dkt 1 at ¶¶ 69–80. And regardless, Williams contends Defendants owe her additional damages, and she requests interest, attorney fees, and costs. Dkt 90 at 22. The proffered $456 neither moots Williams' claims nor undermines her position as lead plaintiff.

*Second,* Defendants object that the Memorandum and Recommendation "failed to address the cumulative impact" of differences between the claim brought by Williams and those of other putative class members. Dkt 89 at 21. But *typical* "is not synonymous with" *identical*. *Doe v First City Bancorporation of Texas Inc*, 81 FRD 562, 569 (SD Tex 1978). The typicality requirement "may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other class members." Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1764 (Westlaw 2021); *Eatmon,* 2011 WL 147680 at \*8. The claims by Williams and those by putative class members are based on the same legal theory and derive from a common nucleus of fact. Williams has thus demonstrated that her claims are "similar enough to the claims of the class so

that" she "will adequately represent them." Wright & Miller, *Federal Practice and Procedure* § 1764.

### d. Objections as to adequacy of representation

Defendants object that the Memorandum and Recommendation "erroneously credited Plaintiff's conclusory, generic declaration over her sworn, contrary testimony." Dkt 89 at 22. Such general objections touch the outer bounds of Rule 72. *Oubre*, 2016 WL 5334627 at *1, citing *Mosley*, 306 F Appx at 42 n 2, & *Nettles*, 677 F2d at 410, overruled on other grounds by *Douglass*, 79 F3d 1415 (5th Cir 1996); *Jones*, 2015 WL 5725196 at *1; *Mejia*, 2017 WL 2274486 at *1 n 2. Regardless, the Memorandum and Recommendation adequately addressed each concern raised in Defendants' response brief (which were similarly generic), appropriately giving weight to all evidence presented. Dkt 86 at 13–16; Dkt 77 at 36–37. To summarize the findings of the Magistrate Judge, Williams is actively involved, counsel is experienced in consumer class actions, and potential conflicts with ongoing class actions in which counsel is involved are minimal. Dkt 86 at 15–16.

### e. Objections as to superiority

Defendants object on five different grounds to the finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3); Dkt 89 at 22–24. None of their objections in this regard have merit. To the contrary, the relatively small amount of damages at issue for each putative class member, the number of putative class members with similar claims, and the common questions of law all suggest that a class action is a superior means of adjudicating this dispute. Dkt 86 at 19–21; see also *Mitchell v State Farm Fire & Casualty Co*, 954 F3d 700, 712 (5th Cir 2020).

*First*, Defendants argue notice-and-cure provisions are a superior dispute resolution method. But those with category two mortgages can't benefit from that provision. And category one notice-and-cure provisions only provide a remedy if Defendants intend to repay the fees upon

request. Otherwise, litigation will ensue regardless.

*Second*, Defendants contend that "fear of under-enforcement is no justification for class certification." Dkt 89 at 22, citing *Flecha v Medicredit Inc*, 946 F3d 762, 769 (5th Cir 2020). True, but the Magistrate Judge didn't rely on underenforcement. He instead found that individual actions would result in negative-value suits. And he appropriately incorporated this finding into his thorough analysis of the Rule 23(b)(3) factors. See Dkt 86 at 19–21; *Flecha*, 946 F3d at 769–70.

*Third*, Defendants contend that the Memorandum and Recommendation improperly rejected "no suits" as an acceptable or preferable alternative. Dkt 89 at 23. The concept of "no suits" is no doubt an "acceptable" alternative to Defendants, who'd rather not be sued. But the possibility that some individuals may file their own suit while others may take no action at all doesn't undermine the economies of time, effort, and expense that class certification here provides. Dkt 86 at 21; *Castano v American Tobacco Co*, 84 F3d 734, 749 n 27 (5th Cir 1996).

*Fourth*, Defendants object to the finding that "managing the class action does not appear unusually difficult." Dkt 86 at 20; Dkt 89 at 23. And they suggest that "manageability problems abound with liability issues." Dkt 89 at 23. But as addressed above, factual differences neither undermine commonality nor predominate over this action. And "many of the issues in the case involve statutory interpretation that can be determined on a class-wide basis with class-wide evidence." Dkt 86 at 20.

*Fifth*, Defendants argue proper regulation is superior to certification. Dkt 89 at 23. To the contrary, "any legally cognizable and legitimately presented grievance placed before a court is entitled to be adjudicated." Wright & Miller, *Federal Practice and Procedure* § 1779; *Deposit Guaranty National Bank v Roper*, 445 US 326, 338 (1980).

    4.  Conclusion

The objections by Defendants Lakeview Loan Servicing LLC and LoanCare LLC are OVERRULED. Dkt 89.

The Memorandum and Recommendation by the Magistrate Judge is ADOPTED as the Memorandum and Order of this Court. Dkt 86.

The motion by Plaintiff Ursula Williams for class certification is GRANTED IN PART and DENIED IN PART. Dkt 72. As to certification of the Texas Debt Collection Act claim, it's GRANTED AS MODIFIED. As to certification of the breach of contract claim, it's DENIED WITHOUT PREJUDICE to refiling.

The following classes are CERTIFIED:

*Lakeview Class*: All persons in the United States (1) with an FHA-insured mortgage executed on or after March 1, 1990, securing a property located in the State of Texas (2) originated or serviced by Lakeview Loan Servicing LLC and (3) subserviced by LoanCare LLC and (4) who paid one or more pay-to-pay fee to LoanCare during the applicable statute of limitations period through March 30, 2022.

*LoanCare Class*: All persons in the United States (1) with an FHA-insured mortgage executed on or after March 1, 1990, securing a property located in the State of Texas (2) serviced or subserviced by LoanCare LLC and (3) who paid one or more pay-to-pay fee to Loancare during the applicable statute of limitations period through March 30, 2022.

SO ORDERED.

Signed on March 30, 2022, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge