United States District Court
Southern District of Texas
**ENTERED**
August 14, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| URSULA N. WILLIAMS, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, | § § § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-1900 |
| | § | |
| LAKEVIEW LOAD SERVICING, LLC AND LOANCARE, LLC, | § § | |
| *Defendants*. | § | |

## **MEMORANDUM AND RECOMMENDATION**

This class action lawsuit regarding mortgage loan fees is before the Court on the parties' Cross-Motions for Summary Judgment.[1]  ECF 102; ECF 104.  The Court heard oral argument on the record in open court on June 1, 2023.  Having considered the parties' submissions, arguments of counsel at the hearing, and the law, the Court RECOMMENDS that Defendants' Motion for Summary Judgment be DENIED, and that Plaintiffs' Motion for Summary Judgment be GRANTED to the extent set forth below.

---

[1] The District Judge referred the case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72.  ECF 92.

## I.      Factual and Procedural Background

The following facts, established by the record, are undisputed.  In January 2012, Plaintiff Ursula Nichole Williams obtained an FHA loan in the amount of $237,077.00 to purchase her home at 3281 Stampede Drive in Bryan, Texas, where she continues to live with her husband.  The mortgage was originally issued and serviced by PHH Mortgage Corporation.  Lakeview Loan Servicing, LLC acquired master servicing rights in 2015 and executed a Subservicing Agreement with LoanCare, LLC.  Williams routinely made her monthly mortgage payments by phone (even after filing this suit), and LoanCare collected a fee of $12.00 each time she did so.  Williams refers to the $12.00 fee as a "pay-to-pay fee," and the Court also uses that phrase to refer to the fees at issue in this case.

On May 29, 2020, Williams filed this suit against Lakeview and LoanCare on behalf of herself and others similarly situated asserting that collection of the pay-to-pay fee from FHA borrowers, like herself, breached the borrowers' mortgage contracts and violated the Texas Debt Collection Act (TDCA).  ECF 1.  In August 2020, mere months after Williams filed this suit, LoanCare applied $456.00 directly to her next-due mortgage payment in what LoanCare characterizes as a refund of pay-to-pay fees it had collected from her to date. On March 30, 2021, LoanCare applied an additional $24.00 to Williams's loan balance due to additional fees it represents were collected in error, for a total credit to Williams's account of $480.00.

2

ECF 102-2 at 60.  Furthermore, LoanCare voluntarily stopped collecting all pay-to-pay fees in October 2020 following enactment of the 2020 Coronavirus Aid, Relief, and Economic Security (CARES) Act.  ECF 102-2 at 11.

Plaintiff Williams filed a Motion for Class Certification on April 2, 2021.  ECF 72.  On March 30, 2022, District Judge Charles Eskridge adopted Magistrate Judge Sam S. Sheldon's recommendation and certified a class action for violation of the TDCA for two classes of plaintiffs:

> *Lakeview Class*: All persons in the United States (1) with an FHA-insured mortgage executed on or after March 1, 1990, securing a property located in the State of Texas (2) originated or serviced by Lakeview Loan Servicing LLC and (3) subserviced by LoanCare LLC and (4) who paid one or more pay-to-pay fee to LoanCare during the applicable statute of limitations period through March 30, 2022.

> *LoanCare Class*: All persons in the United States (1) with an FHA-insured mortgage executed on or after March 1, 1990, securing a property located in the State of Texas (2) serviced or subserviced by LoanCare LLC and (3) who paid one or more pay-to-pay fee to LoanCare during the applicable statute of limitations period through March 30, 2022.

ECF 91 at 11.  After the District Court granted class certification, Defendants filed a motion for leave in the Fifth Circuit to appeal the class certification Order under Federal Rule of Civil Procedure 23(f).  The Fifth Circuit denied the motion.  *Williams v. Lakeview Loan Servicing LLC*, No. 22-90019 (5th Cir. May 19, 2022).  After the Court denied class certification for the breach of contract claims against Lakeview and LoanCare, Plaintiffs voluntarily dismissed those claims.  ECF 35;

ECF 93.   The only claim remaining in the suit is the claim for violation of § 392.303(a)(2) of the TDCA, which prohibits debt collectors from:

> collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer.

The parties have filed cross motions for summary judgment, with each side contending it is entitled to judgment as a matter of law on Plaintiffs' TDCA claim. ECF 102; 104.   Plaintiffs argue they are entitled to summary judgment as a matter of law on all liability elements of their TDCA claim, but do not seek summary judgment on the issue of class members' damages.

In their motion, Defendants present several overriding arguments they contend entitle them to summary judgment as well as arguments that Plaintiffs cannot, as a matter of law, establish all of the elements of a TDCA claim.   Defendants make an independent argument that Lakeview is entitled to judgment on Plaintiff's TDCA claims because "Lakeview did not 'collect' or charge the fees; only LoanCare, a separate company, charged its own fees for its own special services on its own behalf."   ECF 102 at 29.   The remaining arguments are made on behalf of both Defendants.   Defendants argue they are entitled to judgment as a matter of law because Williams' pay-to-pay fees were refunded prior to class certification, rendering her claims moot and requiring vacatur of the "void class certification order."   *Id*. at 29.   In addition, Defendants repeat their arguments from the class

certification stage that several issues—consumer status, payment of fees, and compliance with "notice and cure" provisions—cannot be established on a class-wide basis, entitling Defendants to summary judgment. *Id.* at 56-61. In many respects, Defendants' Motion for Summary Judgment seeks reconsideration of issues decided by the Court in its orders denying Defendants' Motion to Dismiss (*Williams v. Lakeview Loan Servicing LLC*, 509 F. Supp. 3d 676 (S.D. Tex. 2020) (*Lakeview I*)) and granting Plaintiff's Motion for Class Certification (*Williams v. Lakeview Loan Servicing LLC*, No. 4:20-CV-01900, 2022 WL 950875 (S.D. Tex. Mar. 30, 2022) (*Lakeview II*)).

## II.    Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).  If the party moving for summary judgment bears the burden of proof on an issue, the movant must "establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [its] favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  *R.L. Inv.*

*Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013).  In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987).  However, "[c]onclu[sory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citation omitted).

When considering cross-motions for summary judgment, a court must determine "whether a genuine issue of material fact exists or whether one party is entitled to prevail as a matter of law." *CareFlite v. Off. And Pro. Emps. Int'l Union, AFL-CIO*, 612 F.3d 314, 318 (5th Cir. 2010) (citing *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 539 (5th Cir.2004)).

## III.   Analysis

The Court first addresses Lakeview's argument that it is not a proper defendant (III.A).  Next, the Court addresses Defendants' arguments that it is entitled to summary judgment because Plaintiffs' claims are:  moot (III.B); barred by notice and cure provisions (III.C); barred by the voluntary payment (III.D) and good faith (III.E) doctrines; and unable to be proved on a class-wide basis based on the statute of limitations and bankruptcy (III.F).  Lastly, the Court addresses the liability

elements of the TDCA claim and whether Plaintiffs or Defendants have demonstrated that they are entitled to judgment as a matter of law in their favor on those elements (III.G).

### A. Defendant Lakeview is not entitled to summary judgment based on the argument that it did not collect the pay-to-pay fees.

The TDCA applies to anyone who "directly or indirectly engages in debt collection." TEX. FIN. CODE § 392.001(5) (definition of "debt collector"). The TDCA defines "debt collection" as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* § 392.001(4). Mortgage servicers and their assignees are debt collectors under the TDCA. *See Davis v. Wells Fargo Bank, N.*A., 976 F. Supp. 2d 870, 885 (S.D. Tex. 2013) (noting the Fifth Circuit has long recognized that mortgage servicers and assignees "*are* debt collectors, and therefore *are* covered, under the TDCA" (quoting *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013)(emphasis in original)) *on reconsideration on other grounds*, No. 6:11-CV-00047, 2014 WL 585403 (S.D.Tex Feb. 14, 2014).

Plaintiffs argue that Lakeview "indirectly" engaged in debt collection when LoanCare collected pay-to-pay fees while servicing class members' loans pursuant to its subservicing agreement with Lakeview. *See* ECF 111 at 22-23. While servicing her loan, LoanCare expressly represented to Williams that it was acting "on behalf of Lakeview," and Lakeview sent Williams monthly statements

7

instructing her to make checks payable to Lakeview.  ECF 104-1 at 89, 96, 98, 100, 102.

Defendants argue that Lakeview is entitled to summary judgment because it did not, directly or indirectly, charge, collect, or retain the pay-to-pay fees. Lakeview points out that LoanCare charged and collected the pay-to-pay fees purely for LoanCare's own services and on LoanCare's own behalf.  ECF 102 at 29. Defendants have presented summary judgment evidence demonstrating that Lakeview and LoanCare are separate entities and that it is standard in the industry for LoanCare to earn and retain its own ancillary fees.  ECF 117 at 20.  Yet, whether LoanCare and Lakeview are separate corporate entities or it is standard for a servicer to earn and retain its own ancillary fees does not affect whether Lakeview can be held liable under the TDCA.

Whether Lakeview charged or retained the pay-to pay fees for its own account is not the relevant inquiry for TDCA liability.  The task of "loan servicing" can include not only collecting monthly mortgage payments from the mortgagor, but also placing into escrow the mortgagor's payments for taxes and insurance premiums—amounts which likely are not ultimately retained by the mortgagee or master servicer.  *See In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638, 641 (7th Cir. 2007) (explaining that the administration of the right to collect monthly payments, collect late payments, or place the mortgagor's payments

for taxes and insurance premiums in escrow is called "servicing" the mortgage).  The relevant inquiry is whether Lakeview participated indirectly in the collection of the pay-to-pay fees by assigning the loan servicing rights to LoanCare in the subservicing agreement.  It is undisputed that Lakeview held the master servicing rights for the Lakeview Class members' loans and entered into a subservicing agreement with LoanCare.  *See* ECF 117 at 20-21.  It is also undisputed that LoanCare charged and collected the pay-to-pay fees for its own benefit, but in connection with the collection of monthly mortgage payments as Lakeview's subservicer.  Although Lakeview did not charge or retain the pay-to-pay fees, LoanCare would not have had the opportunity to charge and collect pay-to-pay fees for its own account absent the subservicing agreement with Lakeview.  Lakeview "indirectly" collects a debt when LoanCare, as Lakeview's subservicer, collects payments on the mortgage, payments of funds to be placed in escrow, or, fees that are "incident to" those payments. *See infra*, Section III.G.2 (concluding that pay-to-pay fees at issue are "incident to" the mortgage debt).  Defendants cite no case standing for the proposition that Lakeview cannot be held liable under the TDCA for "indirectly" engaging in debt collection based on the actions of its subservicer simply because Lakeview does not charge or retain the fees or funds collected.  Thus, the Court concludes that Defendants have failed to demonstrate that Lakeview is entitled to summary judgment as a matter of law and RECOMMENDS that

Defendants' Motion for Summary Judgment in favor of Lakeview on grounds that

Lakeview did not collect the pay-to-pay fee be DENIED.

> **B. Defendants have presented no new information demonstrating that Plaintiffs' claims are moot and therefore this Court lacks subject matter jurisdiction; accordingly, the Court should not reverse or void its prior orders.**

Defendants acknowledge that this Court previously considered and rejected

their mootness argument but argue the Court's ruling was incorrect and must be

revisited because subject matter jurisdiction must be assessed at all stages of

litigation.  ECF 117 at 12-13.  Therefore, Defendants re-urge their arguments that

refund of Plaintiff's pay-to-pay fees mooted her claims and resulted in the lack of a

justiciable controversy **before** she moved for class certification, and therefore the

Court must void its class certification order.  ECF 102 at 26-29; ECF 117 at 13-20.

Defendants cite case law holding:

> a purported class action becomes moot when the personal claims of all named plaintiffs are satisfied [before a] class has been certified [and] [i]n such a case there is no plaintiff . . . who can assert a justiciable claim against any defendant and consequently there is no longer a 'case or controversy' within the meaning of Article III of the Constitution.

*Murray v. Fid. Nat. Fin., Inc.*, 594 F.3d 419, 421 (5th Cir. 2010) (citations omitted).

In the Order certifying this class action, Judge Eskridge wrote: "a class action

doesn't become moot 'upon tender to the named plaintiffs of their personal claims'

when the plaintiff is diligently pursuing class certification." *Lakeview II*, 2022 WL

950875, at *4 (citing *Serrano v Customs and Border Patrol*, 975 F.3d 488, 492 n.1

(5th Cir 2020) and *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1051 (5th Cir. 1981)).  The Court at that time concluded that Williams's receipt of $456 after her filing of a Complaint containing class allegations and damage claims beyond the refund of fees "neither moots Williams'[s] claims nor undermines her position as lead plaintiff."  *Id.*  Defendants have presented no new facts or legal authority warranting reversal or the voiding of the class certification order.  The additional facts that the total refund to Williams was $480.00 (as opposed to $456.00 as stated in the Order) and exceeds the amount of fees Williams paid during the statute of limitations period is immaterial to the Court's prior conclusion that her claims and those of the class members are not moot.

The Court disagrees with Defendants' legal argument that binding precedent requires dismissal of this case as moot.  ECF 117 at 17- 18.  For example, in *McCaig v. Wells Fargo Bank*, 788 F.3d 463, 479 (5th Cir. 2015), the Fifth Circuit dismissed as "meritless" Wells Fargo's argument that Plaintiff could not pursue the same TDCA violation at issue here because the challenged fees were not "ultimately" collected.  The Fifth Circuit went on to note: "Section 392.303(a)(2) makes 'attempts to collect' actionable.  That the charge was later 'removed' merely suggests it was unauthorized to begin with."  *Id.*

In *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016), the Supreme Court granted certiorari "to resolve a disagreement among the Courts of Appeals

over whether an unaccepted offer of judgment moots a plaintiff's claim, thereby depriving federal courts of Article III jurisdiction."  The Court held that an unaccepted offer of judgment or settlement does not moot a plaintiff's case or deprive federal courts of Article III jurisdiction.  *Id.* at 165.  Defendants attempt to distinguish *Campbell-Ewald* as inapposite because it involved an unaccepted Rule 68 offer of judgment whereas this case involves actual re-payment of the fees charged to Williams during the two-year limitations period.  ECF 117 at 8-9.  Yet, the Supreme Court in *Campbell-Ewald e*xpressly declined to decide whether "the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount."  *Id.*  Before declining to answer that question, the Supreme Court discussed "a trio of 19th-century railroad tax cases" in which the defendant railroad deposited funds into accounts in the plaintiffs' names, which according to California statute, "extinguished" the tax liability at issue in the suit.  *Id.* at 163-65.  In the referenced cases, the plaintiffs received value—extinguishment of the tax liability—but did not have an opportunity to affirmatively accept or reject the payments.  *Id.*  Plaintiff's situation here is analogous to the issue the Supreme Court expressly refused to decide.  She received value from the Defendants when they "refunded" her pay-to-pay fees, but she played no role in and had no agency over a decision to accept that value in satisfaction of her claims.  The

transcript of the June 1, 2023 summary judgment hearing establishes that LoanCare unilaterally applied the refund to Williams's mortgage account; without making a settlement offer to counsel; without providing Williams a meaningful opportunity to accept or reject the offer before they applied the credit to her mortgage account; and without offering Williams the choice to receive the funds in any form other than as a credit to her mortgage balance.  ECF 123.  While she may not have been left "emptyhanded" like the Plaintiff in *Campbell-Ewald*, she certainly had no control over whether to accept the payment and moot her claims.  Despite Defendants' vehement assertions to the contrary, controlling precedent does not dictate that a defendant's unilateral decision to deposit funds into an account belonging to the plaintiff successfully moots the plaintiff's claim and deprives the federal court of subject matter jurisdiction.

Even if the Court were to find Plaintiff's individual claim mooted by the refund, this case fits within the exception recognized by the Fifth Circuit for "situations in which 'the defendants have the ability by tender to each named plaintiff to effectively prevent any plaintiff in the class from procuring a decision on class certification.'"  *Murray v. Fid. Nat. Fin., Inc.*, 594 F.3d at 421 (citing *Zeidman*, 651 F.2d at 1050).  Loancare "refunded" the pay-to-pay fees by crediting Williams's mortgage account after she filed a suit containing class action allegations, but before

she had the opportunity to move for class certification.  These facts fit squarely within the exception recognized by the Fifth Circuit.

In addition, Defendants' counsel's statements at the summary judgment hearing solidify the correctness of the Court's prior ruling that the claims in the suit are not moot.  "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015) (citations omitted).  Furthermore, "[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Id.* LoanCare voluntary ceased charging and collecting pay-to-pay fees during the pendency of the CARES Act, but declined to stipulate at the June 1, 2023 summary judgment hearing that Defendants would not resume charging the pay-to-pay fee. ECF 123 at 72.  Thus, Defendants have not shown that LoanCare's allegedly wrongful behavior cannot reasonably be expected to recur.

Moreover, Defendants' reliance on *Pritchard v. LoanCare, LLC,* No. 1:20-CV-2356-STA-JAY, 2021 WL 3699867, at *3 (W.D. Tenn. Aug. 19, 2021) is unavailing.  The sole basis for federal jurisdiction in that case was the Class Action Fairness Act (CAFA), which requires complete diversity and an amount in controversy in excess of $5,000,000.  Pritchard alleged multiple state law claims

based on pay-by-phone and online servicing process fees, which she contended were not authorized under HUD Guidelines or the FHA Servicing Handbook.  *Id*. at *1. On the deadline for moving for class certification, Pritchard notified the court that she intended to pursue only her individual claims, she would not be moving for class certification, and "expressly reserve[d] all rights she may have to file a motion for class certification at a later date[]. . .."  *Id*. at *2.  The court held that a party cannot "reserve the right" to file a motion for class certification beyond the deadline in the scheduling order.  *Id*.  The court then found it lacked subject matter jurisdiction which had been premised on the CAFA because "it appears to be well established that, if a plaintiff amends her complaint to delete a class allegation, the Court loses jurisdiction over the matter, whereas, if the Court denies a motion for class certification, the Court retains jurisdiction."  *Id*. (internal citations omitted).  As an additional or alternative basis for the finding that it lacked subject matter jurisdiction, the court noted that plaintiff's fees had been refunded, she would not be entitled to attorney's fees if she prevailed, and injunctive relief was unavailable because the defendant was no longer charging the fees to anyone.  *Id*. at *3.  The court noted it was "being asked to adjudicate a class action that has no class and a lawsuit with no possibility of recovery for Plaintiff even if she prevails.  The Court does not believe that was the intent of Congress in passing CAFA."  *Id*. (citations omitted).  Finally, the court noted that even if defendants had not refunded plaintiff's

pay-to-pay fees, she would have been entitled to recover at most $100, an amount well below the required $5,000,000 amount in controversy for CAFA jurisdiction. *Id*. at *4.  Here, Williams has not withdrawn her class action allegations and federal jurisdiction under the CAFA is not at issue.

Under the circumstances, the Court is not persuaded that "the defendant's actions are [more than] mere 'litigation posturing' or [that] the controversy is extinguished." *Fontenot*, 777 F.3d at 748 (changes added).  Defendants' arguments on summary judgment do not warrant reversal of this Court's class certification decision and dismissal of the entire case.  Therefore, the Court RECOMMENDS that Defendants' Motion for Summary Judgment based mootness be DENIED and that this Court need not void its class certification order or dismiss for lack of subject matter jurisdiction.

### C. Defendant is not entitled to summary judgment based on the notice and cure provisions in the loan documents because those provisions do not govern Plaintiffs' TDCA claims.

Defendants argue they are entitled to summary judgment on the class claims because the loan documents of approximately 35% of category one class members contain the following provision:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to the Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party ... of such

alleged breach and afforded the other party hereto a reasonable period
after the giving of such notice to take corrective action.

*Lakeview II*, 2022 WL 950875, at \*3; ECF 102 at 58.  The Court previously noted

that "[c]lass members with category one mortgages may need to provide notice prior

to joining as class members—*should the Court determine that this provision is even*

*applicable*. . . . But this provision doesn't ultimately affect the merits of their claims

once they comply."  *Id.* (emphasis added; internal citations omitted).  Defendants

argue the Court must dismiss Plaintiffs' claims on summary judgment because it

would be nearly impossible to determine by hand review those class members whose

loan documents contain the notice and cure provision alleged to preclude their

claims.  ECF 102 at 58.  In their Reply brief, Defendants clarify their position that

the notice and cure provision is condition precedent to suit for which Plaintiffs bear

the burden of proof and operates as an absolute bar to claims by class members

whose loan documents contain it.  ECF 117 at 42.  Because the Court concludes that

the notice and cure provisions do not constitute a condition precedent to, or

otherwise bar the class members' ability to bring suit on their TDCA claims, no hand

review of each class member's loan documents is necessary.

Defendants represent that *Inge v. Bank of Am., N.A.*, No. 02-17-00386-CV,

2018 WL 5993329, at \*1 (Tex. App.—Fort Worth Nov. 15, 2018, pet. dismissed)

requires dismissal of Plaintiffs' claims for failure to comply with the notice and cure

provision.  ECF 102 at 57.  Although the opinion in *Inge* recites the very same notice

and cure provision at issue in this case it is otherwise inapposite. *Id*. at *1. The language Defendants cite as support for their argument that the notice and cure provision bars Plaintiffs' claims is taken from a discussion about the accrual of a cause of action for statute of limitations purposes. Nothing in *Inge* supports Defendants' argument. Although the plaintiff in *Inge* brought claims under the TDCA, those claims were dismissed on summary judgment because he failed to substantively respond. *See id.* at *2-3. Again, contrary to Defendants' representations, *Inge* does not stand for the proposition that a notice and cure provision applies to bar a plaintiff's TDCA claims when notice has not been provided prior to suit.

The parties' arguments focus mostly on whether the notice and cure provisions apply to a servicer as opposed to a lender, each citing decisions from federal district courts in Florida to support their respective positions. Defendants argue that "Courts 'consistently hold that [the DOT notice term] . . . applies to actions against a servicer.'" ECF 102 at 57 (citing *Kurzban v. Specialized Loan Servicing, LLC*, No. 17-CV-20713, 2018 WL 1570370, at *3 (S.D. Fla. Mar. 30, 2018). Plaintiffs quote a case from the Middle District of Florida stating:

> the 'notice-and-cure' provision applies only to disputes between Plaintiff and her lender concerning acts relating to the mortgage contract. The clause imposes no such obligations regarding disputes Plaintiff has with SLS, which services the loan secured by the mortgage.

ECF 111 at 48 (quoting *Johnson v. Specialized Loan Servicing, LLC*, No. 3:16-CV-178-J-MCR, 2017 WL 4877450, at *2 (M.D. Fla. Oct. 24, 2017)).   Apparently, district courts in Florida disagree about whether a servicer can avail itself of the notice and cure provisions in the mortgage.  *See Costello v. Ocwen Loan Servicing, LLC*, No. 17-80885-CIV, 2018 WL 11368402, at *5 (S.D. Fla. Jan. 29, 2018) ("[T]here is a split of authority on the question of whether a loan servicer my avail itself of a notice and cure provision in a mortgage contract. District Courts squarely confronted with this issue have come down on both sides.").   However, it is not necessary to decide in this case whether the notice-and-cure provision applies to claims against a loan servicer because Plaintiffs' TDCA claims are not subject to the requirements of the notice and cure provision.

The language of notice-and-cure provision states that notice must be given before filing suit on any claim "that arises from the other party's actions *pursuant to* the Security Instrument or that alleges that the other party *has breached* any provision of, *or any duty owed* by reason of, this Security Instrument."  *Lakeview II*, 2022 WL 950875, at *3 (emphasis added).  Therefore, the Court focuses on whether Defendants' collection of the pay-to-pay fee is an action "pursuant to" the Security Instrument.  *See Hill v. Nationstar Mortgage LLC*, No. 1560106-CIV, 2015 WL 4478061, at *3 (S.D. Fla. July 2, 2015) (finding "regardless of the cause of action alleged," plaintiff's claims against servicer were based entirely on breaches of duty

contained in the mortgage agreement and therefore were subject to mortgage's notice and cure provisions); *Wynkoop v. Wells Fargo Home Mortg*., No. 11-60392-CV, 2011 WL 2078005, at *2 (S.D. Fla. May 26, 2011) (rejecting argument that notice and cure provision barred claims and noting that "Plaintiff's RESPA claim arises from statute –it does not rely upon a duty imposed on the Defendant by the Mortgage.").

Plaintiff cites, and the Court finds persuasive, a Southern District of Florida court's interpretation of identical notice and cure language and its finding that the provision did not require notice as a condition precedent to a suit alleging violations of a Telephone Consumer Protection Act (TCPA) claim. *Colon v. Nationstar Mortgage, LLC*, No. 1:15-CV-22901-UU, 2015 WL 7422598, at *2 (S.D. Fla. Nov. 17, 2015) (interpreting the identical notice and cure provision to be "circumscribed to breaches of provisions, and duties owed, within the Mortgage itself." (citations omitted)).  Here, the Plaintiffs' claims arise solely from the statutory duties in the TDCA, not from duties owed by the servicer under the mortgage.  Additionally, the Court finds persuasive an opinion from a Florida court holding that notice and cure provisions in a mortgage do not apply to statutory causes of action like those at issue here:

> [B]ecause the causes of action arise directly from alleged deceptive business practices that are prohibited by the FDCPA and [Florida version of TDCA], rather than the mortgage itself . . .  the notice and cure provision is inapplicable. Belcher has a statutory right of action

that is independent from the requirement under the mortgage agreement
to give pre-suit notice.

*Belcher v. Ocwen Loan Servicing*, LLC, No. 8:16-cv-00690, 2016 WL 7243100, *4

(M.D. Fla. Dec. 15, 2016) (changes added, internal citations omitted).  Thus, the

Court RECOMMENDS that Defendants' Motion for Summary Judgment based on

the notice-and-cure provision in 35% of Plaintiffs' loan agreements be DENIED.

### D. Defendant is not entitled to summary judgment based on the voluntary payment doctrine.

Defendants insist that the FHA loan agreements do not restrict the parties'

freedom to contract for optional services.  *See* ECF 102 at 44-48. Defendants also

argue that Plaintiffs' voluntary payment of the fee precludes them from proving

actual damages.  *See* ECF 102 at 55 (citing "benefit of the bargain" breach of

contract cases).  The Court has previously rejected Defendants' "voluntary payment"

argument.  *Lakeview II*, 2022 WL 950875, at *4 (holding that the "voluntary-

payment rule" argued by Defendants does not apply where "the Legislature or

common law has provided a right of recovery even though payment is voluntary,"

as provided by the TDCA (citing *Dees v. Nationstar Mortg., LLC*, 496 F. Supp. 3d

1043, 1049 (S.D. Tex. 2020); *Barnett v. Caliber Home Loans*, No. 2:19-CV-309,

2020 WL 5494414, at *3 (S.D. Tex. Sept. 10, 2020)); *see also BMG Direct

Marketing, Inc. v. Peake*, 178 S.W. 3d. 763, 776 n.9 (Tex. 2005) (noting the

voluntary payment rule does 'not apply to situations in which the Legislature . . . has

provided a right of recovery even though payment is voluntary."). The fact that Plaintiffs could have used another method to pay their mortgages, but instead paid a fee in exchange for the convenience of paying by phone, has no bearing on whether the fee is "legally chargeable" under the TDCA. Accordingly, the Court RECOMMENDS that, to the extent Defendants move for summary judgment based on the voluntary payment doctrine, the motion should be DENIED.

### E. Defendant is not entitled to summary judgment based on the Good Faith Defense.

TDCA § 392.401 provides that "[a] person does not violate this chapter if the action complained of resulted from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error." Defendants' collection of the pay-to-pay fees at issue in this case was not "an incidental clerical mistake" and Defendants do not argue otherwise. Instead, they argue that they acted in good faith because collection of pay-to-pay fees does not violate § 392.303(a)(2). ECF 102 at 61-62.

The case law does not demonstrate that Defendants are entitled to the protections of the TDCA's good faith defense. For example, courts have applied the defense when a debt collector obtained but failed to file the TDCA-required surety bond with the Secretary of State. *Obella v. Bureau*, No. 4:14-CV-1013, 2015 WL 12570840, at *5 (S.D. Tex. Apr. 20, 2015) (applying TDCA good faith defense where defendant undisputedly obtained surety bond but failed to file a copy with the

Secretary of State and presented evidence of routine practice for broker to file the bond); *Talamor v. I.C. Sys., Inc*., No. 1:16-CV-435-DAE, 2017 WL 3712186, at *7 (W.D. Tex. Aug. 10, 2017) (applying TDCA good faith defense where undisputed record evidence demonstrated that defendant acquired surety bond but erroneously failed to file bond with Secretary of State despite having routine practices in place to ensure timely filing of bonds).

Defendants contend that according to *FIA Card Servs., N.A. v. Gachiengu*, 571 F. Supp. 2d 799, 806-07 n.1 (S.D. Tex. 2008), when "the alleged error is a legal decision on an unclear and disputed area of law," proof of the "use of reasonable procedures adopted to avoid the error are not relevant."  ECF 102 at 61 (cleaned up). However, Defendants' conduct does not fall within the parameters of an "alleged legal error" for which other courts have applied the good faith defense.  In both *FIA Card Servs., N.A. v. Gachiengu* and *Hare v. Hosto & Buchanan, PLLC*, 774 F. Supp 2d. 849, 856 (S.D. Tex. 2011), the district courts applied the TDCA good faith defense when defendants filed suit to confirm arbitration awards outside the prescribed period for confirmation of an arbitration award in section 9 of the Federal Arbitration Act.  However, both courts noted "a circuit split over whether the one-year period in Section 9 is mandatory or permissive."  *Gachiengu,* 571 F. Supp. 2d at 806; *Hare*, 774 F. Supp 2d. at 855 ("Across the country there is a split in the circuits on whether the limitations provision of the FAA are mandatory or

permissive."). Defendants here present no evidence of a "split in legal authority" over whether the TDCA allows pay-to-pay fees under the circumstances present in this case. Indeed, in *Hare v. Hosto & Buchanan*, the district court analyzed Supreme Court cases interpreting the similar good faith exception contained in the FDCPA and found that two Supreme Court cases "read together establish that the bona fide error defense of 1692(k)(c) does not apply to legal errors about the provisions of the Act itself [.]" *Hare v. Hosto & Buchanan*, 774 F. Supp. at 855 (citing *Heintz v. Jenkins*, 514 U.S. 291 (1995) and *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010)). The Fifth Circuit has also recognized the holding in *Jerman* that "the bona fide error defense in 1692(k)(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." *Serna v, Law Office of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 155 (5th Cir. 2015) (citing *Jerman*); *Osborn v. Ekpsz, LLC,* 821 F. Supp. 2d 859, 871 (S.D. Tex. 2011) (noting the Supreme Court's holding in *Jerman* that "the defense did not apply to FDCPA violations resulting from a debt collector's incorrect interpretation of the Act's legal requirements."). The Court sees no reason why the similar good faith provision in the TDCA would apply to errors in interpretation of the TDCA itself. Such an interpretation of the good faith defense would be an exception that swallows the rule because every violation of the TDCA that a defendant believed was not a violation would be excused based on the good

faith defense.  Thus, the Court RECOMMENDS that Defendant's Motion for Summary Judgment on its "bona fide error" affirmative defense be DENIED.

### F. Defendants are not entitled to summary judgment and dismissal of the action based on the individual defenses of statute of limitations and class members' bankruptcies.

Defendants seek summary judgment based on individual defenses of statute of limitations and bankruptcy.  When certifying the class, the Court held that "these individualized issues serve as affirmative defenses, a secondary matter in this litigation." *Lakeview II*, 2022 WL 950875, at *4.  However, the Court defined each certified class as limited to persons "who paid one or more pay-to-pay fee to [LoanCare/LoanCare LLC] during the applicable statute of limitations period through March 30, 2022."  ECF 91 at 11.  By including the statute of limitations in the class definition, the Court eliminated the need for a trial on the issue of limitations. *Mosaic Baybrook One, L.P. v. Simien*, No. 19-0612, No. 21-0159, 2023 WL 3027992, at *23 (Tex. Apr. 21, 2023) ("By date-restricting the certified class to include only members with claims that are timely under Mosaic's understanding of the statute of limitations, the trial court fully addressed Mosaic's [statute of limitations] defense and left no issues to be tried.").  Plaintiffs here agree with Defendants that the class is limited to a two-year statute of limitations. *See* ECF 111 at 46 (stating that each certified class is limited to persons who paid Defendants'

pay-to-pay fees during the period May 29, 2018 through March 30, 2022 and "[a]ccordingly, fees collected prior to May 29, 2018 are a non-issue.").

The Court also previously ruled that the fact that individual class members may have filed bankruptcy does not preclude class certification. *Lakeview II*, 2022 WL 950875, at *4. Defendants contend they have identified an estimated 830 Plaintiffs who have filed bankruptcy. ECF 111 at 52 n.18. Plaintiffs appear to concede that claims held by a bankruptcy estate should be removed from the class. Thus, the filing of bankruptcy by individual class members does not require summary dismissal of the class action. Class members identified as having filed for bankruptcy during the class period can be identified and excluded during the damages phase of the litigation.

> **G. After considering the Parties' cross motions for summary judgment on each TDCA liability element, the Court concludes that Defendants are not entitled to judgment as a matter of law on any TDCA element and that Plaintiffs are entitled to judgment as a matter of law on the TDCA liability elements, except that liability is without prejudice to Defendants' ability to present proof at the damages phase to exclude recovery on any loan that has been previously modified or "deemed modified" to allow pay-to-pay fees.**

The purpose of the TDCA is to prevent debt collectors from using threats, coercion, or other wrongful practices to collect consumer debts. *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). The elements of a claim for violation of § 392.303 of the TDCA are: (1) Plaintiffs' mortgages are consumer debts; (2) Defendants engaged in debt collection within the meaning of the TDCA; (3)

Defendants committed a wrongful act in violation of the TDCA; (4) Defendants committed the wrongful act against the Plaintiffs; and (5) Plaintiffs were injured by the Defendants' wrongful act. *Young v. Select Portfolio Servicing, Inc.*, No. 20-11236, 2021 WL 5968662, at *5 n.5 (5th Cir. Dec. 15, 2021); *Rentfrow v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 4:19-CV-3507, 2020 WL 1893558, at *5 (S.D. Tex. Mar. 25, 2020), *report and recommendation adopted*, 2020 WL 1891848 (S.D. Tex. Apr. 16, 2020).  The Court has fully considered the parties' competing motions for summary judgment on the liability elements of Plaintiffs' TDCA claims.  The Court concludes that with respect to each of the five elements, Defendants' motion should be denied and that Plaintiffs have met their burden to establish the liability elements of their TDCA claim as a matter of law, with the exception that the liability finding is without prejudice to Defendants' ability at the damages phase to exclude from class recovery any loan that has previously been modified or "deemed modified" to allow pay-to-pay fees.  *See, e.g., McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831-MHH, 2019 WL 9171207 at *4 (N.D. Ala., Auguts 1, 2019) (deeming "Class Loans" amended effective June 1, 2018 and allowing convenience fees to be charged by Ocwen as of that date).  The Court addresses each of the five liability elements in turn.

**1.      Plaintiffs' FHA mortgages are consumer debts.**

Defendants argue they are entitled to summary judgment on the TDCA claim because Plaintiffs cannot prove on a class-wide basis that each class member's debt is "consumer debt."   ECF 102 at 59.   Defendants argue that whether each class member's FHA loan was used *primarily* for household purposes can only be proved by examination of each class member's loan transaction and purpose.   ECF 102 at 59.   As support for their argument Defendants cite Plaintiff's use of her home as a mailing address for her business; "data" indicating the presence of tenants; borrowers using different mailing addresses and other indicia of lack of owner-occupancy or use as commercial property.   *Id.* at 59-60.   Plaintiffs contend that, boiled down to their essence, "Defendants arguments are simply reiterations of their previous challenges to the ascertainability of the Classes."   ECF 111 at 52.   The Court agrees with Plaintiffs and rejects Defendants arguments about the need to conduct fact-finding regarding each Plaintiffs' subsequent use of the mortgaged property before determining their consumer status.

The TDCA defines "consumer debt" as an "obligation primarily for personal, family, or household purposes *and arising from a transaction*….".   TEX. FIN. CODE § 392.001(2).   The Plaintiffs' debts in this case arise from their FHA mortgage transactions.   Defendants acknowledge that the district court found at the class certification stage that Plaintiffs as a class met the "consumer debt" element because

28

"every borrower of an FHA-insured mortgage necessarily uses the loan proceeds for household purposes." *Lakeview II*, 2022 WL 950875 at *3. The Court continues to agree with that ruling.

Surprisingly little case law in the Fifth Circuit addresses the definition of "consumer debt." In *Hetherington v. Allied Int'l Credit Corp.*, No. CIV H-07-2104, 2008 WL 2838264, at *3 (S.D. Tex. July 21, 2008), the court cited *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 462 (5th Cir.1999) for the general proposition that the court should examine the transaction "as a whole" in determining whether something is a consumer debt, but found no further guidance from the Fifth Circuit regarding how to make the determination. In *Riviere,* the Fifth Circuit vacated the district court's judgment after a bench trial and remanded the case because resolution of the "consumer debt" issue required "a factual determination of Appellants' purpose in purchasing" the truck at issue. 184 F.3d at 462. Likewise, the *Hetherington* court denied summary judgment because fact issues existed as to whether the plaintiff's debt, which was incurred by overdrawing a commercial bank account, nonetheless constituted consumer debt. *Id.* at 4.

This Court has found only slightly more guidance from the Fifth Circuit than did the *Hetherington* court. In *Garcia v. Jenkins Babb*, *L.L.P.*, 569 F. App'x 274, 276 (5th Cir. 2014), the Fifth Circuit cited a Seventh Circuit case for the proposition that courts must focus on the "nature of the *purchase or transaction*" when

determining whether a debt is a "consumer debt." *Id.* (citing *Miller v. McCalla,*
*Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 874-75 (7th Cir.
2000) (emphasis added)).  The *Garcia* opinion itself is not particularly instructive
for the Court in the context of this case, but the Seventh Circuit's *Miller* decision is
both instructive and persuasive.  In *Miller*, the Seventh Circuit found the mortgage
to be consumer debt under the FDCPA because, even though the purchased home
was later converted to rental property, at the time of the mortgage transaction the
home was plaintiff's residence.  214 F.3d at 874-75.

The definition of "consumer debt" in the TDCA and the above-cited cases
convince the Court that the proper inquiry for determining whether a debt arising
from a transaction is a "consumer debt" is an examination of the purpose of the debt
*at the time of the mortgage transaction*.  Thus, in light of the Court's prior ruling
that consumer debt is established by the requirement in FHA-insured mortgages that
borrowers must occupy the property as their principal residence for at least one year,
the Court need not examine each class member's use of their property in subsequent
years before finding that Plaintiffs have met their burden to prove the existence of
consumer debt.

The Court RECOMMENDS that Defendants' Motion for Summary Judgment
based on the Plaintiff's inability to prove consumer debt as a matter of law should

be DENIED and Plaintiffs' Motion for Summary Judgment on the element of consumer debt should be GRANTED.

### 2. Defendants engaged in debt collection within the meaning of the TDCA when collecting the pay-to-pay fee.

The TDCA defines "debt collection" as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." TEX. FIN. CODE § 392.001(5); *Benson v. Sw. Bell Tel. Co.*, Civil Action No. H-18-1763, 2018 WL 11472144, at *2 (S.D. Tex. Aug. 2, 2018). The TDCA defines "debt collector" as "a person who directly or indirectly engages in debt collection." TEX. FIN. CODE § 392.001(6).

Defendants emphasize that Judge Eskridge has recognized that loan servicing is not "synonymous" with debt collecting, citing *Lakeview II*, 2022 WL 950875, at *3. Yet, at the class certification stage, Judge Eskridge held that whether Defendants' collection of pay-to-pay fees violated the TDCA is a class-wide legal issue. *Id.* At the motion to dismiss stage, the Court was unable to determine whether factual disputes would preclude deciding the issue as a matter of law. *Lakeview I*, 509 F. Supp. 3d at 683. Having reviewed the Parties summary judgment briefing, evidence in the record, and the argument of counsel, the Court finds there are no facts in dispute as to the manner in which the pay-to-pay fee was collected. Furthermore, Defendants make the same arguments on summary judgment that the Court rejected as a matter of law in the context of the motion to dismiss. *See*

*Lakeview I*, 509 F. Supp. 3d at 681-83; *see also Williams v. PHH Mortg. Corp.*, No. 4:20-CV-04018, 2021 WL 3556633, at *4 (S.D. Tex. Aug. 11, 2021) (holding that Plaintiffs sufficiently identified the means by which defendant "collected" an allegedly unauthorized fee for purposes of stating a TDCA claim).

It is well-established that the definition of "debt collector" is broader under the TDCA than it is under the federal Fair Debt Collection Practices Act (FDCPA). *Lakeview I*, 509 F. Supp. 3d at 681-82. "The Texas Legislature knows how to exempt mortgage loan services when that is its intent. That intention is lacking as to [the TDCA]." *Id.* at 682. Moreover, the Fifth Circuit has expressly recognized "that [mortgage loan] servicers and assignees are debt collectors, and therefore are covered, under the TDCA." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722-23 (5th Cir. 2013).

Defendants again argue that LoanCare "switches hats" from loan servicing to debt collecting depending on whether borrowers are making regular payments or are in arrears. ECF 102 at 30-35. But the Fifth Circuit and this Court have held that the TDCA, unlike the FDCPA, applies to debts that are not in default. *Miller,* 726 F.3d at 722; *Lakeview I*, 509 F. Supp. 3d at 682-83. The fact that the pay-to-pay fees were collected on debts that were not past-due does not prevent the conduct from constituting "debt collection" under the TDCA as a matter of law.

Defendants further argue that they did not engage in debt collection in violation of the TDCA because Plaintiffs voluntarily paid the pay-to-pay fees and they are not "incidental" to the mortgage.   Applying canons of statutory interpretation, the Court held in *Lakeview I* that "[t]he plain text of the TDCA 'provides no protection for lenders merely because their collection of a fee was dependent upon a borrower's selection of the lender's fee-based payment method,'" and therefore the collection of the fee was incidental to the loan for purposes of stating a claim under the TDCA.  *Lakeview I*, 509 F. Supp. 3d at 680 (quoting *Caldwell v. Freedom Mortg. Corp.*, No. 3:19-CV-2193-N, 2020 WL 4747497, at *4 (N.D. Tex. Aug. 14, 2020)); *see also PHH Mortg. Corp.*, 2021 WL 3556633, at *5 (defining "incidental to" as "happening by chance and subordinate to some other things; peripheral," (citing BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE, 286 (Oxford 1987))); *Dees*, 496 F. Supp. 3d at 1047 (holding that pay-to-pay fees are "incidental" to the underlying debt and collecting cases); *Barnett*, 2020 WL 5494414, at *4 (concluding that "[t]hough Plaintiffs had the option to pay their mortgages through other, fee-free payment methods, alternative options do not change the pay-to-pay fees' incidental relationship to the underlying debt, nor do they change the fact that Defendant charged and then collected an incidental fee from Plaintiffs.").  As for Defendants' argument that they cannot, as a matter of law, be found liable for violating the TCDA because other cost-free methods of payment

were available but Plaintiffs voluntarily chose the fee-based service, the Court has explained in section III.D of this Memorandum and Recommendation why the "voluntary payment" defense does not preclude Defendants' liability.

In keeping with the Court's prior rulings, the Court RECOMMENDS that Defendants' Motion for Summary Judgment based on the class's inability to prove Defendants engaged in debt collection under the TDCA be DENIED, and Plaintiffs' Motion for Summary Judgment on the element that Defendants engaged in debt collection under the TDCA when collecting pay-to-pay fees be GRANTED.

> **3.     Plaintiffs have demonstrated as a matter of law that the pay-to-pay fees were neither authorized by any unmodified agreement nor otherwise legally chargeable to borrowers.   Defendants have failed to demonstrate as a matter of law that the pay-to-pay fees were authorized by the mortgage agreement or were otherwise legally chargeable.**

As a preliminary matter, the Court has not found clear guidance on which party bears the burden of proof on the exceptions of "expressly authorized" or "legally chargeable" to the prohibition on collecting a fee incidental to a debt obligation as set forth in section 392.303(a)(2) of the TDCA.   However, the allocation of burden is not dispositive here as there are no material facts in dispute and the Court decides the issue as a matter of law.

Plaintiffs contend in this suit that Defendants violated § 392.303(a)(2) of the TCDA which prohibits:

> collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer.

As the Fifth Circuit has noted, "the statute is best read to define "unfair and unconscionable" practices as those listed in its various subsections, including [§ 392.303](a)(2)." *McCaig v. Wells Fargo Bank (Texas), N*.A., 788 F.3d 463, 479 n.7 (5th Cir. 2015). Thus, Defendants' argument that they are entitled to summary judgment because Plaintiffs cannot prove "unfair or unconscionable conduct" is legally incorrect. *Caldwell v. Freedom Mortg. Corp.*, No. 3:19-CV-2193-N, 2020 WL 4747497, at *3 n. 6 (N.D. Tex. Aug. 14, 2020) (finding the TDCA contains an express prohibition. . . on unauthorized, debt-related fee collections without exception."); *Barnett*, 2020 WL 5494414, at *4 ("section 392.303 defines "unfair or unconscionable means' by listing specific practices that violate the statute."). Contrary to Defendants' arguments, Plaintiffs can succeed on the § 392.303(a)(2) claim if they demonstrate that the pay-to-pay fees were neither expressly authorized by their loan agreements nor legally chargeable to borrowers. In other words, collecting a fee that is not authorized by the loan agreement or legally chargeable to the borrower violates the TDCA even without the use of other unfair or unconscionable conduct.

### 3.a The pay-to-pay fees are not expressly authorized by Plaintiffs' loan agreements, and Defendants have presented only a theoretical argument that certain loan agreements were modified to allow such fees.

Williams' FHA-insured promissory note does not expressly authorize the collection of pay-to-pay fees. ECF 102-3 at 16-18. Williams's FHA-insured deed of trust includes a provision permitting lenders to "collect fees and charges authorized by the Secretary" of HUD. ECF 104-1 at 7. LoanCare's corporate representatives testified that they have never seen an FHA note or deed of trust that authorizes a payment processing fee. ECF 104-1 at 25; ECF 104-1 at 36. Indeed, the Court found at the class certification stage that "Plaintiff has proven there is a uniform fee provision as to the mortgages executed on or after March 1, 1990." *Williams v. Lakeview Loan Servicing, LLC*, No. 4:20-CV-1900, 2022 WL 1216577, at *4 (S.D. Tex. Feb. 8, 2022), *report and recommendation adopted*, No. 4:20-CV-01900, 2022 WL 950875 (S.D. Tex. Mar. 30, 2022). Not only have Defendants submitted no evidence to the contrary, Defendants' counsel conceded at the hearing that the Plaintiffs' promissory notes do not mention the fees. ECF 123 at 58-59; *see Dees*, 496 F. Supp. 3d at 1047 (finding that "nowhere in the parties' [FHA] loan documents are the pay-to-pay fees even mentioned, much less expressly authorized.").

Constrained by the above facts, Defendants argue that the fee is authorized by each "point-of-sale agreement," which is what Defendants call the collection of the

pay-to-pay fee.  ECF 102 at 52-54.  The "point-of-sale" agreement is not the "agreement creating the obligation" and therefore cannot provide the authorization required by the TDCA.  *See* ECF 123 at 58 (statement by Defense counsel that "[t]he document creating the debt is the promissory note.").

Defendants next argue the fees are "authorized" because the "point-of-sale" agreements modified the loan documents to expressly authorize pay-to-pay fees. ECF 109 at 57.  This argument also fails.  As this Court has previously pointed out, lenders and/or servicers are barred from modifying FHA loan documents to allow fees that are not authorized by HUD.  *Lakeview II,* 2022 WL 950875, at *3.  Nothing in the record evinces an intention by either side to modify the loan agreement at the time the pay-to-pay fee was collected.  *See Intec Sys., Inc. v. Lowrey*, 230 S.W.3d 913, 919 (Tex. App.—Dallas 2007, no pet.) (stating "contract modification depends on intent").  Further, Defendants' own witness has testified that "agreeing to a fee for Optional Payment Services[] is not considered to be a 'loan modification.'"  ECF 102-2 at 4 (Declaration of Peter O'Bryant).

Finally, Defendants argue that as to some class members, PHH and/or Ocwen may have modified the loan documents to authorize pay-to-pay fees prior to transferring the servicing rights to Lakeview in 2015 or thereafter.  ECF 102 at 52 (citing *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831-MHH, 2019 WL 9171207, at *4-5 (N.D. Ala. Aug. 1, 2019).  At class certification, the Court

viewed this argument with skepticism, noting "HUD regulations require all loans at issue to contain the fee clause [which allows only "fees and charges authorized by the Secretary"], which can't be modified," and concluding "[c]onsequently, though a modification could *theoretically* affect recovery by individual mortgagors, this potential doesn't undermine the common legal questions that arise from the inclusion of the fee clause in all mortgages at issue." *Lakeview II*, 2022 WL 950875, at *3 (emphasis in original).   On summary judgment, Defendants' argument remains purely theoretical.

In *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831-MHH, 2019 WL 9171207, at *1-2 (N.D. Ala. Aug. 1, 2019), plaintiffs alleged that Ocwen's practice of charging a "convenience fee" for allowing borrowers to make mortgage payments by phone violated the FDCPA.  The parties agreed to settle the case.  The "settlement class" in *McWhorter* was comprised of:

> All borrowers on home mortgage loans that were not owned by Ocwen and to which Ocwen acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, who, during the period from December 5, 2013 through and including June 1, 2018, paid a Convenience Fee to Ocwen for making a loan payment by telephone, IVR, or the internet.

*Id.* at 16.  The settlement agreement approved by the *McWhorter* court included a provision that "the loan documents shall be deemed amended, effective as of June 1, 2018, to expressly authorize Ocwen to accept payments made through means not specifically provided for in the borrower's loan documents, and to charge

Convenience Fees in return for accepting those payments." *Id.* at *4.  In support of summary judgment, as they did at the class certification stage, Defendants have submitted the April 23, 2021 Declaration of Peter O'Bryant stating that LoanCare subservices loans for which Ocwen or PHH was a prior servicer or subservicer and opining that LoanCare "reasonably believes" that certain Plaintiffs in the current case also meet the class definition in *McWhorter* and therefore have loans that were deemed modified by the *McWhorter* settlement agreement.  ECF 102-2 at 13-14.

The *McWhorter* opinion does not constitute evidence and LoanCare's "reasonable belief" that some loans have been modified does not meet Defendants' summary judgment burden of proof.  Defendants ask the Court to assume that the *McWhorter* settlement class, which covers borrowers who paid the challenged fees to Ocwen/PHH between December 5, 2013 and June 1, 2018, also includes borrowers who paid the challenged fees to LoanCare/Lakeview from May 29, 2018 through March 30, 2022.  Defendants have not specifically identified a single Plaintiff who fits both definitions.

Defendants bear the burden on their affirmative motion for summary judgment to provide evidence of a loan modification and, in response to Plaintiffs' motion for summary judgment, to present evidence sufficient to raise an issue of fact precluding judgment as a matter of law on this issue.  Defendants have not met their burden to show the pay-to-pay fees are expressly authorized as a matter of law.  In

the absence of evidence showing any class members' loans were modified, Defendants have not raised an issue of fact precluding a finding that, as a matter of law, the pay-to-pay fees are not expressly authorized by the loan agreements. According to Defendants, PHH will not willingly disclose the identity of the borrowers with modified loans, making it impossible to segregate modified loans from unmodified loans. *See* ECF 123 at 57-58; ECF 102-2 at 13-14 ("LoanCare does not have access to the information of third parties, such as Ocwen and PHH, which would be needed to analyze which borrowers have loans meeting the *McWhorter* class definition."). This obstacle does not serve as a substitute for evidence, particularly where Defendants have not explained their efforts to obtain the information.

Meanwhile, Plaintiffs have established as a matter of law that Plaintiffs' FHA loans, as originated, do not expressly authorize the pay-to-pay fees. Yet, because the class certification order contemplates a theoretical possibility that certain class members will not be entitled to recover if their loan was in fact modified to expressly authorize pay-to pay fees, Defendants should be entitled at the damages phase of the litigation to present evidence, if any, that PHH/Ocwen, on their own or through a settlement class, modified particular class members' loans to expressly authorize the pay-to-pay fees. Further, this procedure makes sense because, as Defense counsel recognized at the hearing, even if this argument were successful Defendants would

be entitled to summary judgment only as to the claims of Plaintiffs with modified mortgages.  *See* ECF 123 at 57-58.

Based on the above, the Court RECOMMENDS that Defendants' Motion for Summary Judgment based on the argument that some of the class members' loans may have been modified be DENIED and that Plaintiffs' Motion for Summary Judgment be GRANTED on the issue of whether the pay-to-pay fees are authorized by the FHA loans as originated.  However, this ruling should be without prejudice to Defendants' ability to present evidence at the damages stage of the litigation that specific class members' claims for recovery are barred because their FHA loans were modified to expressly authorize pay-to-pay fees by PHH/Ocwen or a settlement class prior to Lakeview obtaining master servicing rights.

### 3.b    The pay-to-pay fees are not legally chargeable to the class members as persons with FHA-insured mortgages.

Defendants argue that even if not "expressly authorized" the pay-to-pay fees are legally chargeable because (1) Plaintiffs voluntarily contracted to pay them; and (2) they have never been prohibited by HUD.  ECF 102 at 43-51; ECF 117 at 35-38. For the reasons discussed below, the Court finds these legal arguments unavailing.

To begin with, whether plaintiffs voluntarily contracted to pay the fees is not the relevant inquiry.  As detailed in a prior section of this Memorandum and Recommendation, the "voluntary payment" defense does not apply to Plaintiffs' TDCA claims.  The TDCA prohibits collecting or attempting to collect "a charge,

41

fee, or expense unless the "*incidental charge, fee, or expense* is expressly authorized by the agreement creating the obligation *or* legally chargeable to the consumer." TEX. FIN. CODE § 392.303(a)(2).  The TDCA does not define the phrase "legally chargeable."  However, the TDCA prohibits the collection of fees that are incidental to an obligation *unless* the incidental fee is "expressly authorized by the agreement" or "legally chargeable."  Thus, the exception to the prohibition applies to fees that are *incidental to* an obligation.  The Court has already held that the pay-to-pay fees at issue here are *incidental to* the FHA mortgage obligations.  *Lakeview I,* 509 F. Supp. 3d at 680.  The Court now interprets the phrase "legally chargeable to the consumer" to mean the fee must be legally chargeable in the context of the agreement to which the fee is incidental rather than to mean it is legally chargeable pursuant to some independent agreement.  If the proper inquiry were whether a fee was legally chargeable pursuant to some other transaction or contract, the "exception" would swallow the rule and provide authorization for any fee or charge that was set forth in a separate contract.  For these reasons, Defendants' argument that the pay-to-pay fees were legally chargeable because Plaintiffs voluntarily contracted to pay them, must fail.

The Court next considers Defendants' argument that the pay-to-pay fees are legally chargeable because they have not been *prohibited* by HUD.  It is undisputed that in exchange for the privilege of servicing FHA loans, Defendants agreed to

abide by HUD regulations.  ECF 123 at 88.  FHA-approved deeds of trust permit lenders to collect only those fees authorized by HUD.  *See* ECF 104-1 at 7.  The fact that HUD has not prohibited the fees does not make them "legally chargeable" as HUD-authorized fees.

To determine whether the fees incidental to Plaintiffs' FHA mortgage obligations are "legally chargeable" the Court looks to the substance of the HUD regulations.  HUD regulations authorize fourteen types of fees and expenses.  24 C.F.R. § 203.552(a)(1)-(14).  The pay-to-pay fees at issue in this case are not expressly listed as authorized in § 203.552(a).  The catch-all provision of 24 C.F.R. § 203.552(a)(12) permits other "reasonable and customary charges as may be authorized by the Secretary."  HUD publishes the fees that have been authorized by the Secretary in Appendix 3.0 to the HUD Handbook. ECF 104-1 at 53-64.  Pay-to-pay fees are not published in the HUD Handbook.  *See id.*  The HUD Handbook also sets out a procedure for a mortgagee to request approval for a particular fee from the National Servicing Center.  *Id.* at 57.

Defendants rely on expert testimony that pay-to-pay fees are "reasonable and customary" and the argument that other agencies and entities, such as the Veterans Administration, Fannie Mae, and the Texas Department of Savings and Mortgage Lending, have permitted such fees.  ECF 102 at 23-24; ECF 102-2 at 23-53.  But proof that pay-to-pay fees are "reasonable and customary" is only half the battle—

the fees incidental to FHA mortgage obligations also must be authorized by HUD. Nothing in the summary judgment record demonstrates that Defendants or any other servicer sought approval to charge pay-to-pay fees at all, much less at the rates Defendants allege are "reasonable and customary." *See, e.g.,* ECF 123 at 75.

Defendants argue that because HUD regulations do not create a private cause of action Plaintiffs cannot rely the regulations and the HUD Handbook to show the fees are not legally chargeable. The law is clear that HUD regulations do not create a private right of action, but Plaintiffs are not suing to enforce HUD regulations. Plaintiffs bring a cause of action under the TDCA and rely on the HUD regulations only to show that the pay-to-pay fees do not meet the "legally chargeable" exception to the prohibition on the collection of fees incidental to Plaintiff's FHA-insured mortgage obligations. The Court is not persuaded that Plaintiffs' TDCA claim is an impermissible end-run around the prohibition on private enforcement of HUD regulations.

The cases cited by Defendants likewise do not demonstrate their entitlement to summary judgment. For example, the plaintiff in *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 196 (5th Cir. 2016), initially sued the defendants for breach of contract, fraudulent inducement, promissory estoppel and violations of the TDCA. The district court granted summary judgment on all claims. However, the plaintiff appealed only the grant of summary judgment on her breach of contract and

44

fraudulent inducement claims.  When affirming dismissal of her breach of contract claim, the Fifth Circuit held that "HUD regulations do not give the borrower a private cause of action unless the regulations are expressly incorporated into the lender-borrower agreement." *Id.* (citations omitted).  The appeal did not address the TDCA and the Fifth Circuit never considered whether, under TDCA § 392.303(a)(2), HUD regulations could be considered when determining whether fees incident to an FHA-insured mortgage are "legally chargeable."

Defendants also rely on *Roberts v. LoanCare, LLC*, No. 09-21-00058-CV, 2023 WL 2802252, at *7 (Tex. App.—Beaumont Apr. 6, 2023, n.p.h.), in which the plaintiffs appealed the grant of summary judgment on their breach of contract claim alleging breach of HUD regulations that had been expressly incorporated into their Deed of Trust.  When affirming the state district court's grant of summary judgment on the breach of contract claim, the Beaumont Court of Appeals rejected the plaintiffs' reliance on federal case law allowing for a private right of action on HUD regulations that are expressly incorporated into the Deed of Trust.  *Id.* at *6-7 ("[A] mortgagor does not have a private cause of action against a mortgagee for violations of HUD regulations even if they are incorporated by reference in its deed of trust.") The court wrote:

> To the extent that the Roberts' claims are based on the application of HUD statutes and regulations to their private cause of actions . . . we conclude the trial court did not err in granting summary judgment on this issue.

*Id*. at *7.  The holding in *Roberts* applies to a breach of contract based on HUD regulations alleged to have been expressly incorporated into the plaintiffs' deed of trust, a cause of action that fails under Texas, as opposed to federal, law. Again, Plaintiffs here do not sue for breach of contract and do not seek to enforce the HUD regulations in a private cause of action.  Rather,  Plaintiffs seek to enforce the TDCA and look to the HUD regulations only to determine whether the pay-to-pay fees are exempt from the prohibitions of the TDCA as "legally chargeable" or "expressly authorized."  Furthermore, the decision of the lower court in *Roberts* to deny leave to add a claim for violation of § 392.304(a)(8) of the TDCA was based on the legal principle that representations in loan modification discussions ending in foreclosure are not actionable misrepresentations under the TDCA.

Likewise, *Vinson v. Amerihome Mortg. Co., LLC*, No. 4:22-CV-0928-P, 2023 WL 2895251, at *2 (N.D. Tex. Apr. 11, 2023) does not entitle Defendants to summary judgment.  *Vinson* reiterated that under federal case-law "[a] violation of the HUD regulations may sustain a breach-of-contract claim if the regulations are explicitly incorporated into the Deed." *Id*. at *4.  However, the Deed at issue in *Vinson* did not expressly incorporate any HUD regulations, so the court granted summary judgment on plaintiff's breach of contract claim.  *Id*.  Further, the plaintiff in *Vinson* brought negligence claims alleging the defendant note-holder owed the plaintiff a duty to provide notice of assignment, manage the loan and escrow

properly, comply with notice provisions in the deed of trust before foreclosing, and protect the borrower's rights. The plaintiff alleged these duties were evidenced by the HUD regulation allegedly incorporated in the deed of trust. The court held that defendants owed no such duty because: 1) Texas law imposes no legal duty on a mortgagee to a mortgagor that would support a negligence claim; 2) the HUD regulations were not expressly incorporated into the Deed; and 3) even if they had been incorporated, the HUD regulations do not create an independent legal duty running from mortgagee to mortgagor. *Id*. at *2 (citing *Roberts*). Significantly, *Vinson* neither addressed nor involved a claim under § 392.303(a)(2) of the TDCA.

In a companion case to this one, *Williams v. PHH Mortg. Corp*., No. 4:20-CV-04018, 2021 WL 3556633, at *6 (S.D. Tex. Aug. 11, 2021), Plaintiffs sought a declaration that "the FHA servicing restrictions promulgated by HUD render Defendants' pay-to-pay fees not 'legally chargeable' to consumers with FHA-insured mortgages, as that term is used by the TDCA." Judge Eskridge dismissed the plaintiffs' claims for declaratory and injunctive relief, stating:

> The Fifth Circuit has long held 'that the HUD Handbook does not afford a private cause of action.' *Law v Ocwen Loan Servicing, LLC*, 587 F Appx 790, 794 (5th Cir 2014, per curiam), citing *Roberts v Cameron-Brown Co*, 556 F2d 356, 360–61 (5th Cir 1977). Plaintiffs can't simply recast their claim to enforce guidelines in the HUD Handbook (for which there's no private right of action) as one for declaratory judgment and injunctive relief. See *Glanville v Dupar, Inc*, 727 F Supp 2d 596, 602 (SD Tex 2010) (similar holding as to claims under Federal Insurance Contributions Act and Federal Unemployment

> Tax Act). And because there's 'no private cause of action, the claim for
> declaratory and injunctive relief fails as a matter of law.' Ibid.

*Id*. Despite recognizing that "the HUD Handbook does not afford a private cause of action," Judge Eskridge did not find plaintiff's TDCA claim failed as a matter of law. *Id.* at 7. Here, Plaintiffs seek neither a declaratory judgment nor an injunction enforcing HUD regulations. Rather, they seek an injunction and declaratory relief tied specifically to compliance with the TDCA, i.e., to require Defendants "to cease collection of all improperly charged fees" and "to implement procedures to ensure they cease collecting and attempting to collect the improper fees." ECF 1 at 17. Because Plaintiffs seek to enforce the TDCA via injunctive relief as opposed to seeking to enforce HUD regulations, the *PHH* decision does not support dismissal of Plaintiffs' TDCA claim in this case.

For these reasons, the Court RECOMMENDS that Defendants' Motion for Summary Judgment be DENIED and Plaintiffs' Motion for Summary Judgment be GRANTED on the "expressly authorized" and "legally chargeable" exceptions to § 392.303(a)(2)'s prohibition on collecting fees incident to a debt.

### 4. Defendants committed a wrongful act against Plaintiffs.

The fourth element, that the wrongful act in element three was committed against the Plaintiffs, is satisfied as a matter of law by the definition of each certified class, both of which are limited to individuals that "paid one or more pay-to-pay fee to LoanCare."

**5.      Defendants' collection of pay-to-pay fees caused Plaintiffs' damages.**

Proof of an actual injury is a liability element of Plaintiffs' TDCA claims. *Kerr v. Bank of New York Mellon Tr. Co., N.A. as Tr. of CWABS Asset-Backed Certificates Tr. 2007-12*, No. 02-20-00179-CV, 2021 WL 1421440, at \*7 (Tex. App.—Fort Worth Apr. 15, 2021, pet. denied) (holding that "[t]o maintain an action for damages under the TDCA, a plaintiff must plead and prove actual damages."); *Searcy v. CitiMortgage, Inc*., 733 F. App'x 735, 740 (5th Cir. 2018) (affirming dismissal of TDCA claim in the absence of damages).  Section 392.403(a) of the TDCA provides that a person may sue for injunctive relief as well as "actual damages sustained as a result of a violation of this chapter."  The Texas Supreme Court has stated that for a plaintiff to recover damages under the TDCA "[i]t is sufficient to show that the harm incurred was a reasonably foreseeable result of the wrongdoer's conduct." *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986); *Clark v. Deutsche Bank Nat'l Tr. Co.*, No. 3:14-CV-3590-B, 2016 WL 931216, at \*6 (N.D. Tex. Mar. 11, 2016) (discussing *Brown*).

Defendants argue that refund of the fees, interest, and attorney's fees are not "actual damages" under the TDCA.  ECF 102 at 54-56.  In *Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433, 435 (5th Cir. 2000), cited by Defendants, the Fifth Circuit was faced with defining "actual damages" under 15 U.S.C. § 1640(a)(1) of the Truth in Lending Act (TILA).  Citing Black's Law Dictionary, the Fifth Circuit

defined actual damages as "[c]ompensation for actual injuries or loss." *Id.* The Fifth Circuit further held that to show actual damages in the context of a TILA claim, a plaintiff must "show that, had he been properly informed, he would have engaged in a different or less-expensive transaction." *Id* at 436. Because plaintiffs in *Perrone* could not show that had defendant disclosed a $400 acquisition fee they would not have entered the transaction, they failed to meet their burden of proof on their TILA claims. *Id.* at 439-440. The ultimate holding of *Perrone* is that under TILA "individual reliance is necessary to prove actual damages," and therefore a class action could not be certified. *Id.* at 440. Contrary to Defendants' assertion, *Perrone* does not hold that restitution is never a measure of actual damages. Defendants cite no case construing the TDCA to prohibit recovery of unlawful fees as actual damages. ECF 102 at 55.

Unlike cases such as *Perrone*, in which plaintiffs could not prove a causal link between an alleged statutory violation and their damages, Defendants' collection of the pay-to-pay fees at issue in this case caused Plaintiffs to incur the expense of the pay-to-pay fees. *See Searcy*, 733 F. App'x at 739 (TDCA plaintiff may recover for financial harm but plaintiffs' financial harm was caused by their failure to pay their mortgage, not by any alleged misrepresentations in defendants' denial of modification letter). Therefore, the Court RECOMMENDS that Defendants' Motion for Summary Judgment be DENIED and Plaintiffs' Motion for Summary

Judgment be GRANTED on the fifth element of Plaintiffs' TDCA claim, that the illegal fees caused Plaintiffs' injury.

## IV.    Conclusion and Recommendation

For the reasons discussed above the Court RECOMMENDS that Defendants' Motion for Summary Judgment (ECF 102) be DENIED.   The Court further recommends that Plaintiffs' Motion for Summary Judgment be GRANTED. However, the ruling granting Plaintiffs' Motion for Summary Judgment should be without prejudice to consideration at the damages stage of whether:

(1) certain Plaintiffs are precluded from recovery due to loan modifications by PHH/Ocwen, on their own or through a settlement class, to expressly authorize the pay-to-pay fees;

(2) certain Plaintiffs are precluded from recovery because they did not pay the pay-to-pay fee within the statute of limitations; and

(3) certain Plaintiffs are precluded from recovery because they have filed bankruptcy.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C).   Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto.*

*Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on August 14, 2023, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge