# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **URSULA NICHOLE WILLIAMS,** on behalf of herself and all others similarly situated, | § § § § | |
| | § | **Case No.: 4:20-CV-1900** |
| Plaintiff, | § § | |
| v. | § § | |
| **LAKEVIEW LOAN SERVICING, LLC** and **LOANCARE, LLC,** | § § § | |
| Defendants. | § § § | |

## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF FINAL ORDER AND JUDGMENT

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | OVERVIEW OF THE LITIGATION | 6 |
|  | a. Summary of Plaintiff's Claims | 6 |
|  | b. Procedural Posture | 7 |
|  | c. The Settlement Negotiations and the Proposed Settlement | 10 |
| III. | APPLICABLE LEGAL STANDARDS | 11 |
| IV. | THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, WARRANTING FINAL APPROVAL | 14 |
|  | a. Plaintiff and Class Counsel Have Provided Excellent Representation to the Settlement Class, Negotiating at Arm's Length with No Indicia of Collusion | 15 |
|  | b. The Settlement Provides Significant Relief for the Settlement Class | 17 |
|  | i. Continued litigation would be risky, complex, lengthy, and expensive | 17 |
|  | ii. The Settlement Provides Meaningful, Automatic Payments to Settlement Class Members, With No Class Members Requesting to be Excluded from the Class | 18 |
|  | iii. The Requested Attorneys' Fees and Costs Are Reasonable and In Line with Similar Awards Approved in the Fifth Circuit | 20 |
|  | iv. The Settlement Provides for a Non-Reversionary Common Fund | 20 |
|  | c. The Settlement Treats All Settlement Class Members Equitably, and There Is No Agreement Required to Be Identified under Rule 23(e)(3) | 21 |
|  | d. The Factual Record Was Well-Developed Through Discovery and the Litigation Was Sufficiently Advanced | 21 |
|  | e. The Notice Program Satisfies Rule 23 and Due Process, and Constitutes the Best Notice Practicable | 22 |
|  | f. The Opinions of Class Counsel and the Settlement Class Representatives | 22 |
| V. | MAINTAINING CERTIFICATION OF THE CLASSES FOR SETTLEMENT PURPOSES IS APPROPRIATE | 23 |
| VI. | CONCLUSION | 23 |

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
   No. 4:17-CV-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019)................................ 13

*In re Apple Computer Sec. Litig.*,
   No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ..................... 18

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) .................................................................................... 11

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) ........................................................................ 12, 22

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. Jan. 13, 2020) ................................ 19

*Erica P. John Fund v. Halliburton Co.*,
   No. 002-CV-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ........................ 14

*Hale v. State Farm Mut. Automobile Ins. Co.*,
   No. 12-0660, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ........................................ 20

*Hays v. Eaton Grp. Attorneys, LLC*,
   No. 17-88-JWD-RLB, 2019 WL 427331 (M.D. La. Feb. 4, 2019)............................. 14

*In re Heartland Payment Sys., Inc. Customer Data Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) .......................................................... 12, 14, 16

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex 2010) .................................................... 12, 14, 17, 21

*Lee v. Metrocare Servs.*,
   No. 3:13-CV-2349, 2015 WL 13729679 (N.D. Tex. July 1, 2015)............................ 17

*ODonnell v. Harris Cty., Texas*,
   No. CV H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ..................... *passim*

*Reed v. General Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) .............................................................................. 13, 17

*Stirman v. Exxon Corp.*,
    280 F.3d 554 (5th Cir. 2002) ............................................................... 15

*Union Asset Mgmt. Holdings A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ............................................................... 13

*United States v. City of Miami, Fla.*,
    614 F.2d 1322 (5th Cir. 1980) ............................................................. 11

*West Virginia v. Chas. Pfizer & Co.*,
    314 F. Supp. ......................................................................................... 18

**Statutes**

Class Action Fairness Act, 28 U.S.C. §1715 ............................................ 5, 11

Texas Debt Collection Act ....................................................................... 7, 8, 9

**Other Authorities**

Fed. R. Civ. P. 23(e)(2) ................................................................................. 13

Fed. R. Evid. 408 .......................................................................................... 10

Federal Rule of Civil Procedure 23 ......................................................... *passim*

Federal Rule of Civil Procedure 23(e) .................................... 11, 13, 15, 17

Rule 23(a) and (b)(3) ..................................................................................... 23

Rule 23(e)(2) ........................................................................................... *passim*

Rule 23(e)(2)(B) ............................................................................................ 16

Rule 23(e)(3) ................................................................................... 12, 17, 21

United States Constitution Due Process Clause ............................................ 4

## I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), the Class Action Settlement Agreement (the "Settlement Agreement") (Doc. No. 169), and this Court's Order Granting Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order") (Doc. No. 171), Plaintiff Ursula Nichole Williams ("Plaintiff" or "Settlement Class Representative") respectfully requests that this Court grant final approval of the settlement (the "Settlement") reached between Plaintiff and Defendant Loancare, LLC ("Loancare" or "Defendant") (collectively with Plaintiff, the "Parties") and enter the Final Order and Judgment.

The Settlement in this action (the "Action") will provide significant benefits for Settlement Class Members. The Settlement provides for a common fund of $2,300,000.00 (the "Settlement Fund") for the benefit of Settlement Class Members, with no reverter to Loancare. The Settlement Fund represents 56.9% of the total amount of Fees[1] that Plaintiff and Settlement Class Members allege were improperly collected by Defendant (roughly $4 million). No claim forms are required. Rather, Settlement Class Members will automatically receive a check in the amount of their Individual Allocations, calculated based on a proportional share basis based on the total amount of Fees paid by each Settlement Class Member on that Class Loan, as compared to the total aggregate amount available for payment to Settlement Class Members. Thereafter, any residual funds will be

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them as set forth in the Settlement Agreement, Doc. No. 169.

1

disbursed to a *cy pres* recipient, the Texas Bar Foundation, an organization that provides funding to enhance the rule of law and the system of justice in Texas.

Plaintiff and Class Counsel believe that the Settlement is in the best interest of the Settlement Class and clearly satisfies the standard for final approval as discussed herein. Plaintiff and Class Counsel have adequately represented the Class, achieving a Settlement that provides meaningful relief to Settlement Class Members without the need to submit a claim form to receive those benefits. *See* Doc. No. 171 at ¶ 7; Doc. No. 169 at ¶¶ 4.1-4.5. This Settlement is the product of arm's-length negotiations by experienced and informed counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses, and it was reached only after intensive litigation, discovery, and negotiations, including a full-day mediation session with Mr. Paul D. Clote. Doc. No. 168 at ¶ 16.

The Court-approved notice program has been fully implemented. The Parties undertook an extensive notice program in connection with class certification and provided members of the certified Classes ample opportunity to request exclusion from the Classes at that time. No one requested exclusion from the Classes. For the Class Notice of the Settlement, the Court-appointed Settlement Administrator sent the approved Notice to all 42,793 Class Members. *See* Doc. No. 174 at ¶¶ 7-8; *see also* Supplemental Declaration of Makenna Snow of ILYM Group, Inc. Regarding Notice and Settlement Administration ("Supp. ILYM Decl.") at ¶ 3. After remailing the Notice to any non-delivered recipients, the mailings have reached over 99% of Class Members. *See* Doc. No. 174 at ¶ 14; Supp.

ILYM Decl. at ¶ 7. The 99% delivery success rate is at the high-end of the range endorsed by the Federal Judicial Center. *See* MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, p. 27 (3d ed. 2010) (the norm is in the 70-95% range).

The response by Settlement Class Members has been overwhelmingly positive, further reinforcing the position that final approval of the Settlement is warranted. The deadline for objecting was December 2, 2025, and, to date, there have been no objections to the Settlement or to Class Counsel's request for attorneys' fees, litigation expenses, and a service award. Supp. ILYM Decl. at ¶ 10.

The Settlement yields significant and valuable benefits for the Settlement Class, especially when considering the costs, risks, and delay of continued litigation and possible appeals. Throughout this litigation Defendant has denied any wrongdoing and defended its legal position vigorously. This Settlement will provide Settlement Class Members with compensation now and avoid the risk and uncertainty of further litigation, as well as a possible appeal.

Accordingly, Plaintiff respectfully submits that the Settlement satisfies all criteria for final approval, and specifically request this Court enter a Final Order and Judgment, substantially in the form of attached Exhibit A, that:

    (i)    finds that the Court has personal jurisdiction over the Parties and all Settlement Class Members and that the Court has subject matter jurisdiction to approve the Agreement;

(ii)    grants final approval of the Settlement as fair, reasonable, and adequate and gives effect to the Settlement Agreement;

(iii)    directs the Parties and their counsel to implement and consummate the Settlement Agreement according to its terms and provisions;

(iv)    declares the Settlement Agreement to be binding upon, and have res judicata and collateral estoppel effect in all pending and future lawsuits or other proceedings maintained by or on behalf of, Plaintiff and the Settlement Class Members;

(v)    maintains certification of the Certified Classes as a single Settlement Class for the purpose of judgment on the Settlement;

(vi)    finds that the notice program as set forth in Section 7 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court, and that in light of the extensive notice program undertaken in connection with class certification and the ample opportunity provided to Settlement Class Members to request exclusion from the Classes at that time, no second opportunity is required for Settlement Class Members to exclude themselves from the Settlement Class in connection with the Settlement proceedings;

4

(vii)   finds that Plaintiff and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Settlement Agreement and grants Plaintiff's filed motion for attorneys' fees, costs, and Settlement Class Representative's Service Awards (Doc. No. 172);

(viii)  permanently bars and enjoins all Settlement Class Members from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise), any lawsuit or other action in any jurisdiction based on the Released Claims;

(ix)    incorporates the Release set forth in Section 3 of the Settlement Agreement, makes the Release effective as of the Final Settlement Date, and forever discharges the Released Persons as set forth in the Settlement Agreement;

(x)     finds that LoanCare provided proper and timely notice of the Settlement Agreement to the appropriate federal and state officials, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715 and that the Court reviewed the substance of the notices and finds that they complied with the applicable CAFA requirements;

(xi)    authorizes the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of this Agreement and its implementing documents (including all exhibits to this Agreement) if such changes are not materially inconsistent with the Court's Final Order and Judgment or do not materially limit, or materially and

5

adversely affect, the rights or obligations of the Settlement Class Members under the Settlement Agreement;

(xii)   orders that the Court retains continuing and exclusive jurisdiction over all matters relating to the Settlement or the consummation of the Settlement; the validation of the Settlement; the construction and enforcement of the Settlement and any orders entered pursuant thereto; and all other matters pertaining to the Settlement or its implementation and enforcement;

(xiii)   directs that judgment of dismissal on the merits and with prejudice of the Action (including all individual claims and class action claims presented thereby against both Defendants) shall be final and entered forthwith, without fees or costs to any Person or Party except as provided in the Settlement Agreement; and

(xiv)   without affecting the finality of the Final Order and Judgment for purposes of appeal, retains jurisdiction as to the administration, consummation, enforcement and interpretation of this Agreement and the Final Order and Judgment, and for any other necessary purpose.

## II.    OVERVIEW OF THE LITIGATION

### a.  Summary of Plaintiff's Claims

On May 29, 2020, Plaintiff filed a putative class action complaint (the "Complaint") against LoanCare and Lakeview Loan Servicing, LLC ("Defendants") in the United States District Court for the Southern District of Texas (the "Action") for alleged violations of the

Texas Debt Collection Act ("TDCA") and breach of contract. *See* Doc. No. 1. More specifically, the Complaint alleges that Defendants routinely and systematically violate provisions of the TDCA and breach uniform covenants in mortgages guaranteed by the Federal Housing Administration ("FHA") by collecting Fees for optional payment services from borrowers that are not authorized by their mortgage agreements, the FHA rules, or permitted by law. *See id.*

### b. Procedural Posture

On July 29, 2020, Defendant Lakeview Answered the Complaint. Doc. No. 25. On that same day, Defendant LoanCare filed a Motion to Dismiss seeking dismissal of Plaintiff's claims against LoanCare. Doc. No. 27.

On September 4, 2020, Plaintiff simultaneously filed a Notice of Partial Voluntary Dismissal, dismissing her breach of contract claims against LoanCare (*see* Doc. No. 35) and an Opposition to Defendant LoanCare's Motion to Dismiss, arguing Defendant LoanCare's Motion to Dismiss as to Plaintiff's TDCA claims should be denied (Doc. No. 36). Defendant LoanCare filed its reply in further support of its Motion to Dismiss on September 18, 2020. Doc. No. 38. The Court denied Defendant LoanCare's Motion to Dismiss on December 22, 2020, finding Plaintiff "sufficiently pleaded facts to support her argument that the fees charged by LoanCare violate the TDCA." Doc. No. 59. Defendant LoanCare filed an Answer to the Complaint on January 21, 2021. Doc. No. 62.

On April 2, 2021, Plaintiff filed a Motion for Class Certification. Doc. No. 72. Defendants opposed Plaintiff's motion (Doc. No. 77), and Plaintiff filed a reply in further support (Doc. No. 79).

On February 8, 2022, Magistrate Judge Sam S. Sheldon issued a Memorandum and Recommendation recommending Plaintiff's Motion for Class Certification be granted as to Plaintiff's TDCA claims against Lakeview and LoanCare under modified class definitions but denied as to Plaintiff's breach of contract claim against Lakeview. *See* Doc. No. 86. On March 30, 2022, the Court adopted Magistrate Judge Sheldon's Memorandum and Recommendation (*see* Doc. No. 91), certifying the following classes (the "Certified Classes"):

> **Lakeview Class**: All persons in the United States (1) with an FHA-insured mortgage executed on or after March 1, 1990, securing a property located in the State of Texas (2) originated or serviced by Lakeview Loan Servicing LLC and (3) subserviced by LoanCare LLC and (4) who paid one or more pay-to-pay fee to LoanCare during the applicable statute of limitations period through March 30, 2022.

> **LoanCare Class**: All persons in the United States (1) with an FHA-insured mortgage executed on or after March 1, 1990, securing a property located in the State of Texas (2) serviced or subserviced by LoanCare LLC and (3) who paid one or more pay-to-pay fee to Loancare during the applicable statute of limitations period through March 30, 2022.

*Id*. at p. 11. On April 13, 2022, Plaintiff filed a Stipulation of Dismissal as to her breach of contract claim against Lakeview. Doc. No. 93.

On September 30, 2022, Defendants filed a Motion for Summary Judgment, arguing summary judgment should be entered in their favor because the TDCA does not apply to

the facts of this Action. Doc. No. 102. On that same day, Plaintiff filed a Motion for Summary Judgment, seeking summary judgment in her favor as to liability on the TDCA claim. ECF No. 104.

On August 14, 2023, after completion of the briefing of the Parties' cross-motions (*see* Doc. Nos. 110-111, 117 regarding Defendants' Motion for Summary Judgment and Doc. Nos. 109, 116 regarding Plaintiff's Motion for Summary Judgment) and oral argument, Magistrate Judge Christina A. Bryan issued a Memorandum and Recommendation recommending Plaintiff's Motion for Summary Judgment be granted and Defendants' Motion for Summary Judgment be denied (Doc. No. 125), which was adopted by the Court on September 26, 2023 (Doc. No. 130).

Thereafter, each Party filed a proposed Trial Plan (*see* Doc. Nos. 146 and 148), addressing the Party's proposed plan for a trial on damages or why a trial is or is not necessary on damages for Plaintiff and the Certified Classes. On October 1, 2024, the Court held a Status Conference wherein the Court requested the Parties provide further briefing on Plaintiff's proposed motion for summary judgment with respect to damages (*see* Doc. No. 152), which the Parties did (*see* Doc. Nos. 157-159).

On March 4, 2025, the Court entered an order finding that Plaintiff's briefing on the issue of what her proposed motion for summary judgment with respect to damages would entail was not sufficiently responsive and directing Plaintiff to submit a revised filing. Doc. No. 160. Plaintiff submitted a supplemental statement on March 14, 2025. Doc. No. 161. On March 18, 2025, the Court entered an Order finding that Plaintiff may bring a motion

for summary judgment on the terms stated in her supplemental filing. Doc. No. 162.

### c.  The Settlement Negotiations and the Proposed Settlement

On April 29, 2025, the Parties filed a letter advising the Court that following entry of the Court's March 18, 2025 order, the Parties agreed to mediation and were in the process of finalizing the scheduling of that mediation and would further notify the Court with details of the mediation once those were in place. Doc. No. 163. On May 5, 2025, the Parties filed a letter notifying the Court that the Parties had scheduled mediation with Mr. Paul D. Clote on June 3, 2025. Doc. No. 164.

On June 3, 2025, the Parties attended a full-day mediation in front of Mr. Paul D. Clote. Prior to the mediation before Mr. Cote, the Parties exchanged both formal and informal discovery regarding the merits of the case and class certification under Fed. R. Civ. P. 23 and Fed. R. Evid. 408.

Following mediation, the Parties filed a letter dated June 17, 2025, informing the Court that the Parties had reached an agreement in principle and were working on memorializing the terms of said agreement. Doc. No. 165. On July 17, 2025, the Parties fully executed the Settlement Agreement, which memorializes the terms and conditions of the proposed Settlement and embodies all relevant exhibits thereto. Doc No. 167.

On August 6, 2025, Plaintiff filed her Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support. Doc No. 167. Within ten days after the proposed Settlement was filed and at least 90 days before the final approval hearing, the Settlement Administrator, ILYM, timely served, on August 15, 2025, the

CAFA notices required under 28 U.S.C. §1715 on the appropriate state and federal Attorney Generals and designated recipients. *See* 28 U.S.C. §1715; Supp. ILYM Decl. at ¶ 8. In response, the Settlement Administrator has not received or been advised of any objections to the Settlement. *Id.* at ¶ 10.

This Court granted the Unopposed Motion for Preliminary Approval of the Settlement on August 13, 2025. Doc No. 171. In accord with the Preliminary Approval Order, the Settlement Administrator implemented the approved Notice program. On September 12, 2025, the ILYM Group caused (i) the Postcard Notice to be mailed, via U.S. First Class Mail, to all 42,793 individuals on the Class List, and (ii) the Email Notice to be sent to all 42,793 individuals on the Class List. *Id.* at ¶ 3. The ILYM Group also prepared and has maintained a Settlement Website at www.ilymgroup.com/williams and a toll-free telephone number (844-817-3937) for Class Members to call should they have questions or want additional information, which were included in the Notices. *Id.* at ¶ 9. No Class Member has objected to the Settlement. *Id.* at ¶ 10.

## III.    APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of class action claims. *See* Fed. R. Civ. P. 23(e). A class action should be approved if the court finds it "fair, reasonable, and adequate." *Id*. at 23(e)(2). The Fifth Circuit has recognized a strong public policy in favor of settlement of class action lawsuits. *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting the "overriding public interest in favor of settlement" in class action cases); *United States v. City of Miami, Fla.*,

11

614 F.2d 1322, 1332 (5th Cir. 1980); *see also In re Heartland Payment Sys., Inc. Customer Data Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012) (finding a strong presumption in favor of fairness when a class settlement is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery") (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex 2010) ("strong presumption" in favor of settlement); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007).

Rule 23(e)(2), as amended effective December 1, 2018, provides that, in determining whether a settlement is "fair, reasonable, and adequate," the court should consider whether:

    (A)    the class representatives and counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment;[2] and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

---

[2] Plaintiff addressed the reasonableness of the requested attorneys' fees, litigation expenses, and service award in the fee application and incorporated memorandum of law filed with the Court on November 18, 2025. *See* Doc. No. 172.

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. 4:17-CV-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019).

Along with the Rule 23(e)(2) factors, courts in this Circuit also consider the following six factors (the "*Reed* factors") in analyzing the propriety of a class action settlement:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible discovery; and (6) the opinions of class counsel, class representatives, and absent class members.

*Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Union Asset Mgmt. Holdings A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (same).

"Because the Rule 23 and case-law factors overlap, courts in this district often combine them in analyzing class settlements." *ODonnell v. Harris Cty., Texas*, No. CV H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019) (citing *Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019); *Al's Pals Pet Care*, 2019 WL 387409, at *3; *see also* Fed. R. Civ. P. 23(e)(2) Committee Notes to 2018 amendments ("The goal of this amendment [to Rule 23(e)(2)] is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

In short, the determination of whether to grant final approval to a proposed settlement involves a balance. "A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1063; *see also Klein*, 705 F. Supp. 2d at 650 (when considering approval, a court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial") (internal quotation marks omitted).

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, WARRANTING FINAL APPROVAL

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Erica P. John Fund v. Halliburton Co.*, No. 002-CV-1152-M, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (quoting *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1063). "This presumption reflects the strong public interest in settling class actions." *ODonnell*, 2019 WL 4224040, at *8 (citing *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.")); *Hays*, 2019 WL 427331, at *8 ("Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable[,] and adequate.") (quoting *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex.*, 910 F. Supp. 2d

14

891, 930-31 (E.D. La. 2012)).

The Settlement in this Action is fair, reasonable, and adequate under the factors identified in Rule 23(e) and the Fifth Circuit's *Reed* opinion, warranting final approval.

### a. Plaintiff and Class Counsel Have Provided Excellent Representation to the Settlement Class, Negotiating at Arm's Length with No Indicia of Collusion

The Fifth Circuit has held the adequacy inquiry requires the court to consider: "[1] the zeal and competence of the representative[s'] counsel and … [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of the absentees[.]" *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002) (citing *Berger v. Compaq Computer Corp.*, 257 F.2d 475, 479 (5th Cir. 2001), and *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)).

Here, Plaintiff has adequately represented the Class throughout this Action. She has been actively involved throughout the course of the litigation and settlement, assisting Class Counsel in investigating the claims on an individual basis, reviewing case documents, remaining apprised of the litigation, and overseeing settlement negotiations. Doc. No. 173 at ¶¶ 52-53. Further, Plaintiff has no conflict with the Settlement Class, asserts no claim for individual relief, and was prepared to testify at trial. Plaintiff's efforts, including the risks she voluntarily took as well as the time she expended advancing the litigation, were crucial to achieving the excellent result for the Settlement Class. *See id*.

Class Counsel have fully and adequately represented all members of the Settlement Class. They are well-qualified and experienced as described in detail in Class Counsel's

declarations filed in support of Plaintiff's motion for an award of attorneys' fees. *See id.* at ¶¶ 20-27 and 32-38. In brief, Class Counsel vigorously litigated this case by performing such tasks as: (a) extensive pre-filing investigation; (b) researching the law applicable to Plaintiff's claims and Defendants' defenses; (c) researching, drafting and filing the complaint; (d) reviewing documents; (e) opposing Defendant's motions to dismiss; (f) drafting discovery; (g) obtaining contested class certification; (h) obtaining partial summary judgment; (i) drafting Plaintiff's mediation statement; (j) participating in a full-day mediation followed by post-mediation negotiations; and (k) successfully negotiating the Settlement. *See id.* Class Counsel's efforts demonstrate that they vigorously and zealously represented the Class. It is Class Counsel's informed opinion that this Settlement represents an exceptional result and is in the best interest of the Class. *See id.* at ¶ 27.

In addition, and in satisfaction of Rule 23(e)(2)(B), the Parties' negotiations were at arm's length, hard fought, and at times contentious, conducted with the assistance of a neutral mediator. *See* Doc. No. 167. As noted above, there is typically a presumption of fairness that a settlement is fair and reasonable when it is the result of arm's length negotiations between experienced counsel. *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1063 (citations omitted). The arm's length nature of the negotiations and the vigorous litigation of the Action also establish a lack of collusion. *ODonnell*, 2019 WL 4224040, at *9-10. As the court observed in *ODonnell*, there is no suggestion of fraud or collusion in a case, like this one, where "[t]he proposed class settlement was the product of rigorous, hard-fought negotiations conducted at arm's-length." *Id.* Thus, the court may "presume

16

that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Id*. (citing *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 7283639, at *12 (W.D. Tex. Aug. 20, 2018)).

**b. The Settlement Provides Significant Relief for the Settlement Class**

When determining if the relief provided for the class is adequate, Rule 23 instructs this Court to take into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2). Consideration of the Rule 23(e)(2) factors as informed by the *Reed* factors weighs in favor of final approval. *See Reed*, 703 F.2d 170 (listing the "range of possible recovery" as the fifth factor).

**i. Continued litigation would be risky, complex, lengthy, and expensive**

While Plaintiff has calculated the maximum value of the Settlement Class's claims to be greater than the settlement amount, the maximum value of Plaintiff's and the Settlement Class's claims must be discounted by the identifiable risks. *See Klein*, 705 F. Supp. 2d at 651 ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened."); *see also Lee v. Metrocare Servs.*, No. 3:13-CV-2349, 2015 WL 13729679, at *6 (N.D. Tex. July 1, 2015) ("Inherent in compromise is a yielding of

17

absolutes and an abandoning of highest hopes." (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Here, the risks of continued litigation are substantial. As set forth above, Defendants have vigorously denied Plaintiff's allegations of wrongdoing throughout this Action. Undoubtedly, a trial would have been lengthy and expensive. Likewise, without settlement, class certification would have continued to have been hotly disputed by Defendants. Plaintiff anticipates that she would have faced a motion by Defendants to decertify the Certified Classes and Plaintiff faced a risk of decertification. Moreover, Plaintiff anticipates that any ruling in her favor would have likely been appealed by Defendants, adding further delay and expense. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. at 743-44. For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess of $100 million. Nonetheless, the trial court disagreed and overturned the verdict, entering a judgment notwithstanding the verdict for the individual defendants and ordering a new trial with regard to the corporate defendant. *Id*.

> ii. **The Settlement Provides Meaningful, Automatic Payments to Settlement Class Members, With No Class Members Requesting to be Excluded from the Class**

Under the Settlement, each Settlement Class Member is entitled to an automatic payment of his or her *pro rata* distribution. Doc. No. 169 at ¶¶ 4.5-4.6. The method of

18

distributing the Settlement Fund is thus simple and efficient.

Further, the relief provided to Settlement Class Members is significant. As previously noted, the Settlement creates a Settlement Fund of $2,300,000, which represents roughly 56.9% of the Fees paid by Settlement Class Members during the Class Period. Doc. No. 168 (Joint Decl. of Pulliam and Kauffman) at ¶ 9. After litigating this case for more than five years, reaching a settlement that provides such value to the Settlement Class Members is a meaningful and successful conclusion to the case without imposing a burden on the Class Members to submit a claim to receive the benefits. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800, 2020 WL 256132, at *7 (N.D. Ga. Jan. 13, 2020) (weighing reasonableness of settlement benefits that are certain and available now against years of litigation and uncertainty).

The Court has already determined that the notice program in this case satisfies Rule 23 and due process. Doc. No. 171 at ¶ 12. The Settlement Administrator has now fully implemented the notice program, providing over 99% of the Class Members with notice – exceeding the range endorsed by the Federal Judicial Center. *See* Supp. ILYM Decl. at ¶ 7; *see also* MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, p. 27 (3d ed. 2010) (the norm is in the 70-95% range). There were no requests for exclusion, nor were there any objections. *See* Supp. ILYM Decl. at ¶¶ 10-11. Thus, the Settlement enjoys the support of Settlement Class Members.

19

### iii. The Requested Attorneys' Fees and Costs Are Reasonable and In Line with Similar Awards Approved in the Fifth Circuit

As set forth in Plaintiff's Motion for Award of Attorneys' Fees, Litigation Expenses and Service Award and incorporated Memorandum of Law in Support (Doc. No. 172), Class Counsel's request for attorneys' fees, litigation expenses, and service award is directly in line with similar awards approved in the Fifth Circuit. *See id.* A lodestar cross-check confirms the reasonableness of Class Counsel's fee request. *Id.* at ¶¶ 16-17; *see also* Doc. No. 173 at ¶¶ 39-48. Thus, the percentage requested and the lodestar cross-check weigh in favor of final approval.

### iv. The Settlement Provides for a Non-Reversionary Common Fund

As noted above, there is no claims process; instead, each Settlement Class Member will automatically receive a check in the amount of his or her Individual Allocation, calculated based on a proportional share basis based on the total amount of Fees paid by each Settlement Class Member on that Class Loan, as compared to the total aggregate amount available for payment to Settlement Class Members. Thereafter, any residual funds will be disbursed as a *cy pres* award to the Texas Bar Foundation. No funds from the Settlement will revert to Defendant. Doc. No. 169 at ¶ 4.7. Thus, the distribution of benefits is fair and equitable. *See Hale v. State Farm Mut. Automobile Ins. Co.*, No. 12-0660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) (finding distribution method involving direct payments to class members whose addresses are known to the parties, plus small number

20

of claims forms to others, to be sufficiently effective). Accordingly, consideration of each of these four subfactors weigh in favor of final approval.

### c. The Settlement Treats All Settlement Class Members Equitably, and There Is No Agreement Required to Be Identified under Rule 23(e)(3)

Under the Settlement, there is no unfair or preferential treatment of any Settlement Class Member. Payments to Settlement Class Members will be made on a *pro rata* basis. *See* Doc. No. 169 at ¶ 4.7. Thus, each Settlement Class Member is given fair and equal treatment. Additionally, there are no additional agreements outside of the Settlement Agreement that require identification under Rule 23(e)(3). Accordingly, these factors weigh in favor of final approval.

### d. The Factual Record Was Well-Developed Through Discovery and the Litigation Was Sufficiently Advanced

This factor requires the Court to look to whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Klein*, 705 F. Supp. 2d at 653 (citing *Ayers*, 358 F.3d at 373).

In this case, the Parties completed discovery and briefed cross motions for summary judgment. The factual record in this case was relied on in mediation and eventually settling the case by evaluating the number of Class Members, unique loans, and the dollar amount of Fees collected from Class Members. Accordingly, counsel for both sides fully understood the strengths and weaknesses of their positions before they entered into settlement negotiations.

21

In addition, Class Counsel's significant experience in litigating class actions and similar claims provided useful benchmarks to evaluate the merits of this case and to allow Class Counsel to evaluate the reasonableness of the Settlement here. *See* Doc. No. 168 Accordingly, "[t]he parties … have ample factual and legal information with which to evaluate the merits of their competing positions and to 'make a reasoned judgment about the desirability of settling the case on the terms proposed.'" *ODonnell*, 2019 WL 4224040, at *10 (quoting *In re Educ. Testing Serv.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006)).

### e. The Notice Program Satisfies Rule 23 and Due Process, and Constitutes the Best Notice Practicable

As set forth above, this Court has already determined that the notice program in this case satisfies Rule 23 and due process. Doc. No. 167. The notice program has now been fully implemented, providing over 99% of the Class Members with notice of the Settlement. *See* Supp. ILYM Decl. at ¶¶ 3-9. What is more, the Settlement Administrator continues to maintain the Settlement Website and toll-free phone line and respond to inquiries from Class Members. *Id*. at ¶ 9. Accordingly, the notice provided fulfills all of the requirements of Rule 23 and due process and constitutes the best notice practicable under the circumstances.

### f. The Opinions of Class Counsel and the Settlement Class Representatives

"The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *DeHoyos*, 240 F.R.D. at 292; *see also*

*ODonnell*, 2019 WL 6219933, at \*13 (court must give class counsel's opinion appropriate weight, noting that class counsel tends to be most familiar with the case). Here, it is Class Counsel's informed opinion that this Settlement represents an exceptional result and is in the best interest of the Class. *See* Doc. No. 167. In addition, the Class Representative supports the Settlement.

## V.    MAINTAINING CERTIFICATION OF THE CLASSES FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court certified the Classes upon concluding all of the requirements of Rule 23(a) and (b)(3) were satisfied. Doc. No. 91. Nothing has changed since the Court's class certification ruling. For these same reasons, this Court should maintain certification of the Classes as a single Settlement Class for the purpose of judgment on the Settlement.

## VI.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court finally approve the proposed Settlement and enter a Final Order and Judgment, in substantial form to Exhibit A attached hereto.

Dated: December 19, 2025        Respectfully submitted,

*/s/ James L. Kauffman*
James L. Kauffman (admitted *pro hac vice*)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, Suite 540
Washington, DC 20007
202-463-2101
202-463-2103 (fax)
jkauffman@baileyglasser.com

Randall K. Pulliam (admitted *pro hac vice*)
Edwin Lee Lowther (admitted *pro hac vice*)
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th St.
Little Rock, AR 72201
501-312-8500
501-312-8505 (fax)
rpulliam@cbplaw.com
llowther@cbplaw.com

*Attorneys for Plaintiff and the Settlement Class*

**CERTIFICATION OF COUNSEL**

I hereby certify that this document contains 5,707 words, excluding the caption, table of contents, table of authorities, and signature block.

*/s/ James L. Kauffman*
James L. Kauffman

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) on December 19, 2025.

*/s/ James L. Kauffman*
James L. Kauffman

25